[No. A078340. First Dist., Div. Four. Dec. 7, 1998.]

CITY OF ATASCADERO et al., Plaintiffs and Appellants, v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al.,
Defendants and Respondents.

## COUNSEL

Folger Levin & Kahn, William A. Norris, Michael A. Kahn, Gregory D. Call and Karen J. Petrulakis for Plaintiffs and Appellants.

Munger, Tolles & Olson, Ronald L. Olson, George M. Garvey, Marc T. G. Dworsky, Andrew J. Thomas, McCambridge, Deixler & Marmaro, Richard Marmaro and Larry S. Greenfield for Defendants and Respondents.

## OPINION

McGUINESS, J.—This appeal arises from the wreckage of the Orange County bankruptcy. Appellants are 14 California cities and local agencies[1] who deposited funds with the Orange County (the County) Treasurer for investment in the County Investment Pools (the Pool), a statutory investment trust.[2] After the Pool collapsed in December 1994 and the County declared bankruptcy, most Pool participants elected to settle with the County by releasing their claims against the County and assigning to the County any claims they had against third parties in exchange for a contingent, contractual right to participate in any recovery the County might obtain from its various lawsuits against third parties. Appellants opted not to waive or release their rights to proceed on direct claims against the County and third parties. They then proceeded to bring suit against Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), and other entities and individuals associated with Merrill Lynch.[3]

Appellants now appeal from entry of judgment in favor of respondents following the sustaining of a demurrer without leave to amend to their second amended complaint. Appellants contend they have properly pleaded causes of action against respondents based on breaches of duties owed directly to them, separately and independently of any duties respondents

---

[1]Appellants are the Community Redevelopment Agency of the City of Buena Park, the Community Redevelopment Agency of the City of Montebello, the Redevelopment Agency of the City of Santa Barbara, the Redevelopment Agency of the City of Yorba Linda, the Santiago County Water District, the Yorba Linda Water District, and the cities of Atascadero, Buena Park, Claremont, Milpitas, Montebello, Mountain View, Santa Barbara, and Yorba Linda (appellants).

[2]The Pool was actually made up of a commingled investment pool, a commingled bond pool, and a specific investment account. (*In re County of Orange* (Bankr. C.D.Cal. 1995) 183 B.R. 594, 596.) For convenience, and in accordance with the practice followed in the opinions of the federal bankruptcy court, we will refer to the Pool in the singular.

[3]Respondents are Merrill Lynch, Pierce, Fenner & Smith, Inc.; Merrill Lynch & Co., Inc.; Merrill Lynch Government Securities, Inc.; Merrill Lynch Capital Services, Inc.; Merrill Lynch Money Markets, Inc.; and Michael G. Stamenson (collectively, respondents).

owed to the Pool or its trustee. Respondents argue that appellants' claims against them are actually claims seeking recovery for injury to the trust property of the Pool itself; and, as such, they must be made not by appellants, as beneficiaries of the trust, but by the trustee himself as the sole real party in interest. On the basis of our review of the applicable principles of the law of trusts, considered in light of both the controlling stipulations of the County as trustee and the decisions of the federal bankruptcy court, we conclude that appellants have pleaded facts in their second amended complaint sufficient to state causes of action on direct claims for relief against respondents. We therefore reverse the judgment and decision of the trial court sustaining the demurrer.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Under applicable California law, California counties are authorized to accept funds from cities, counties, and other government agencies or entities for deposit in trust. (Gov. Code,[4] §§ 27100.1, 53684.) Pursuant to this law, the Pool was formed by the County and administered by the County Treasurer in order to invest excess funds of various local agencies. Once public entities deposited their funds into the Pool, a trust was created under California law, and the County itself became the trustee of Pool deposits held in trust by the County Treasurer on behalf of the depositors. (§§ 27100.1, 53684; *In re County of Orange* (Bankr. C.D.Cal. 1996) 191 B.R. 1005, 1013-1018; *In re County of Orange, supra,* 183 B.R. at pp. 596-597, 605-606.)

---

[4]Unless otherwise indicated, all further statutory references are to the Government Code.

Section 27100.1 provides: "Notwithstanding any other provision of law, when any public entity or any public official acting in a fiduciary capacity, who is required or authorized by law to deposit funds in the county treasury, makes a deposit, those funds shall be deemed to be held in trust by the county treasurer on behalf of the depositing entity or public official. The funds shall not be deemed funds or assets of the county and the relationship of the depositing entity or public official and the county shall not be one of creditor-debtor."

Section 53684 provides in pertinent part: "(a) Unless otherwise provided by law, if the treasurer of any local agency, or other official responsible for the funds of the local agency, determines that the local agency has excess funds which are not required for immediate use, the treasurer or other official may, upon the adoption of a resolution by the legislative or governing body of the local agency authorizing the investment of funds pursuant to this section and with the consent of the county treasurer, deposit the excess funds in the county treasury for the purpose of investment by the county treasurer . . . .

"(b) The county treasurer shall, quarterly, apportion any interest or other increment derived from the investment of funds pursuant to this section in an amount proportionate to the average daily balance of the amounts deposited by the local agency and district.

". . . . . . . . . . . . . . . . . . . . . . .

"(f) It is the intent of the Legislature in enacting this section to provide an alternative procedure . . . for local agencies to deposit money in the county treasury for investment purposes. Nothing in this section shall, therefore, be construed as a limitation on the authority of a county and a city to contract for the county treasurer to perform treasury functions for a city . . . ."

Appellants are 14 of the nearly 200 governmental entities (Pool Participants) that deposited funds into the Pool for investment by the County Treasurer, Robert L. Citron. By late 1994, approximately $7.6 billion was invested in the Pool, $200 million of which was deposited by appellants alone. The County implemented a highly speculative investment strategy that placed principal at risk with little liquidity to provide protection from market volatility. Merrill Lynch acted as securities and financial broker and adviser for the County in these transactions. In December 1994, the Pool's investment scheme collapsed. Ultimately, on December 6, 1994, the County filed for bankruptcy protection under chapter 9 of the United States Bankruptcy Code. (*In re County of Orange, supra,* 183 B.R. at p. 596.) Appellants collectively suffered the loss of a large portion of their invested funds.

On January 12, 1995, shortly after filing for bankruptcy, the County brought suit against Merrill Lynch in bankruptcy court. In mid-1995, the County entered into a settlement agreement (the Comprehensive Settlement Agreement, or CSA) with the various local governmental entities, districts, and public agencies that had deposited funds in the Pool (identified in the CSA as "Non-County Pool Participants"). Under the CSA, the County agreed to return to all these Pool Participants specified portions of the funds they had deposited into the Pool, amounting to approximately 77 percent of those funds. The CSA required the Pool Participants to make a choice as to the remainder of their claims, or the "Deficiency Amount." The large majority of Pool Participants chose "Option A," pursuant to which they (a) settled any claims they had against the County for their losses, and (b) expressly assigned to the County "any and all" additional claims they may have had against third parties, in return for a specified share of the net litigation proceeds that might be realized as a result of the County's pursuit of such claims itself. Appellants chose "Option B," pursuant to which they (a) retained all their rights to proceed directly against the County for the Deficiency Amount, and (b) reserved and retained all claims and rights to proceed independently against third parties. Thus, the Option B Pool Participants did not assign to the County *any* of their claims against third parties, including Merrill Lynch. Instead, they retained their right to pursue such claims independently.

The bankruptcy court entered its order authorizing and approving the CSA on May 2, 1995. On October 25, 1995, the County filed a second amended complaint against Merrill Lynch in bankruptcy court. In its amended complaint against Merrill Lynch, the County made clear that the only direct claims of any Pool Participants it was pursuing were those specifically

assigned to it by the Option A Pool Participants, and that it was pursuing such claims as the *assignee* of the Option A Pool Participants.[5]

Meanwhile, in October 1995, each of the appellants proceeded to file suit in the bankruptcy court against the County pursuant to its rights under Option B, alleging breaches of trust and fiduciary duty and seeking damages for its losses from the collapse of the Pool. On May 16, 1996, under the jurisdiction of and with the express approval of the bankruptcy court, the County and appellants negotiated a settlement agreement (the "Stipulation re Dismissal of Adversary Proceeding and Resolution of All Claims of Option B Pool Participants Against the County," or Stipulation).

In the Stipulation, appellants agreed to release their claims against the County for their Pool investment losses, in return for the County's agreement to pay appellants (a) an additional $7.5 million, (b) County warrants in the principal amount of $8 million at interest of 6.5 percent per annum, and (c) the first $9 million of net litigation proceeds from the County's own third party litigation. In addition, the Stipulation expressly stated that appellants "can preserve their direct claims against third parties," such as Merrill Lynch. In this regard, the Stipulation provided that "[t]he County shall not . . . give any third party . . . any release of liability such third party may have to any Settling Option B Pool Participant on account of any direct claim that a Settling Option B Pool Participant may have, if any, against any third party" on various grounds.[6] The County expressly agreed that it "shall not assert any claim to any proceeds recovered or determined by a court to

---

[5]Paragraph 13 of the County's second amended complaint states: ". . . Pursuant to the CSA, the Option A Pool Participants assigned any and all 'Pool-Related Claims' against third parties to the County . . . . The County asserts the claims herein, in part, and/or in the alternative, as assignee of the Option A Pool Participants."

The County's amended complaint alleged six claims for relief in bankruptcy against Merrill Lynch, asserting (1) Merrill Lynch's bankruptcy claims against the County were void as illegal and ultra vires; (2) the County was entitled to a setoff in an amount exceeding Merrill Lynch's claims; (3) any allowable bankruptcy claim of Merrill Lynch against the County was equitably subordinated to the claims of the County's other creditors; (4) the $1.6 billion in securities and proceeds of securities sales held by Merrill Lynch under reverse repurchase agreements with the County were rightfully the property of the County; (5) enforcement of the automatic bankruptcy stay against Merrill Lynch; and (6) avoidance of unauthorized transfers to Merrill Lynch made after the filing of the bankruptcy petition. In addition, the County's second amended complaint alleged as "counterclaims" to Merrill Lynch's claims against it six additional claims for restitution and damages for breaches of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to make unauthorized use of public funds, violations of state and federal securities laws, and fraud.

[6]The grounds for direct claims by Option B Pool Participants specifically enumerated in the Stipulation include (a) fraud and deceit; (b) unfair business practices; (c) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962(c)); (d) receipt of stolen property (Pen. Code, § 496); (e) violation of state or federal securities laws;

be recoverable by Settling Option B Pool Participants, if any, on such direct claims. . . ." On the other hand, the Stipulation also reserved the rights of *both* the County and appellants with regard to their separate third party litigation,[7] and stated that "[t]he parties reserve for future determination whether or to what extent the Settling Option B Pool Participants can assert any claims against third parties alleged to be owned by or held in any trust which is alleged to be applicable to the deposits of the Settling Option B Pool Participants with the Pools. . . ." In short, while the Stipulation provided that appellants retained their "direct claims against third parties," the County also retained its right to assert claims for itself or the Option A Pool Participants against those same third parties.[8]

Appellants initially filed their complaint against Merrill Lynch on September 15, 1995, in San Francisco Superior Court. On the motion of Merrill Lynch for change of venue, the case was transferred from San Francisco to Contra Costa County on February 14, 1996. On April 12, 1996, appellants filed a first amended complaint in the Contra Costa County Superior Court, seeking compensatory and punitive damages for losses in excess of $80 million. In addition to alleging Merrill Lynch had breached various legal duties owed directly to appellants—breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, fraud and deceit, conversion, civil liability for receiving stolen property under Penal Code section 496, negligent misrepresentation and violation of RICO—the first amended complaint

---

(f) negligence, breach of duty, or breach of fiduciary duty "owed by a third party directly to any Settling Option B Pool Participant (as distinguished from a duty or fiduciary duty owed to an alleged trust or a trustee for an alleged trust, to which any Settling Option B Pool Participant was an alleged beneficiary)"; and (g) aiding and abetting a breach of fiduciary duty of the County, "including a claim based on an allegation that the Settling Option B Pool Participants were beneficiaries of a trust prior to the commencement of the County Chapter 9 Case, which trust became subject to attack by the County in a bankruptcy case by reason of any act or omission of such third party . . . ."

[7]Paragraph 18 of the Stipulation, entitled "Reservation of Asserted Rights Respecting Third Party Litigation," provides: "Nothing contained in this Stipulation shall affect the rights or positions of the County with respect to the claims that it asserts for itself and/or on behalf of the Option A Pool Participants in litigation against third parties now pending or hereafter initiated. Nothing contained in this Stipulation shall affect the rights or positions of any Settling Option B Pool Participant with respect to any claims they may assert in litigation against third parties now pending or hereafter initiated." (Underscore in original.)

[8]The parties' general intent in the Stipulation is set out in paragraph 1, which states in pertinent part: "The parties intend by this Stipulation to settle and resolve the Option B Pool Participant Claims against the County . . . and intend to clarify that the Settling Option B Pool Participants can preserve their direct claims against third parties. The parties reserve for future determination whether or to what extent the Settling Option B Pool Participants can assert any claims against any third parties alleged to be owned by or held in any trust which is alleged to be applicable to the deposits of the Settling Option B Pool Participants with the Pools. . . ."

made several claims alleging that Merrill Lynch had violated obligations to the Pool as a trust and to the County as trustee, and that the trustee was not properly representing appellants' interests as trust beneficiaries.[9] Appellants also filed a parallel complaint in federal court in November 1995. Merrill Lynch had not responded to either complaint as of September 1996. On September 17, 1996, appellants voluntarily dismissed the federal court action without prejudice, in order to pursue their litigation in the single forum of the state court.

On October 11, 1996, respondents filed a demurrer to appellants' first amended complaint. Respondents' demurrer contended that, as beneficiaries of the statutory Pool trust, appellants were not real parties in interest with standing to pursue causes of action against Merrill Lynch for injury to trust property. Because the County in its capacity as trustee of the Pool was already pursuing claims against Merrill Lynch in a separate action, respondents argued appellants' lawsuit should either be dismissed or stayed. In opposing the demurrer, appellants argued (a) they were pursuing their own "direct claims" against Merrill Lynch and were the only parties with standing to pursue such claims; and (b) they were also the real parties in interest with respect to the trust claims because the County had failed to pursue those claims on appellants' behalf.

At oral argument on respondents' demurrer to the first amended complaint, appellants argued their claims against Merrill Lynch were legally and factually separate and distinct from those of the County, because the relationship of Merrill Lynch with the County was different in substance from

---

[9]The first amended complaint alleged as follows: "10. The Trustee (whether the Treasurer or the County of Orange or both) . . . has failed and refused to represent [appellants'] interests as it is required to do, and has in fact taken positions adverse to [appellants], arguing, *inter alia*, that the trust no longer exists, that Orange County is entitled to retain the trust assets formerly belonging to [appellants] and that Orange County has a right and [appellants] have no right to the funds which [appellants] gave to the Treasurer in trust. In so doing, the Trustee . . . has placed itself in an irremedial [*sic*] position of conflict of interest with the beneficiaries of the trust, has abdicated its duties, and, as a matter of fact and law, has given [appellants] the power and the right to pursue all claims as to which [appellants] enjoy ownership on equitable or other grounds, including all the claims asserted herein. The Trustee, and all those associated with the Trustee, are disqualified from pursuing any claims on behalf of [appellants] by virtue of, among other things, their abdication of their duties, their denial of the existence of the trusts and their trust obligations, their taking positions inconsistent with their obligations, their taking positions adverse to [appellants], their irremedial [*sic*] conflict of interest and their collusion with the Merrill Lynch [respondents] . . . .

"11. As the result of the Trustee's inherent conflict and abdication of duties owed to [appellants] herein, if any payment on account of trust or related losses is made by the Merrill Lynch [respondents] to Orange County and/or the Treasurer/Trustee, the Merrill Lynch [respondents] must first pay [appellants] to the extent of their losses. If the Merrill Lynch [respondents] pay any money to Orange County before making payment to [respondents], they do so at their own peril and without any effect on [appellants'] rights to recover those same sums."

Merrill Lynch's relationship with appellants. Thus, while Merrill Lynch managed the Pool portfolio for the County and made investments for it, it was the alleged misrepresentations of Merrill Lynch to appellants that induced them to invest in the Pool in the first place. On November 5, 1996, the trial court sustained the demurrer with leave to amend. The trial court ruled that appellants' "trust claims cannot be prosecuted in this action" because the Trustee was already prosecuting an action on such claims against Merrill Lynch, and any "[c]hallenges to the jurisdiction or authority of [the Trustee of the Pool] must be made by [appellants] in the pending federal action." However, the trial court also ruled appellants could "prosecute direct actions to recover damages, other than losses sustained by the trust," and it permitted appellants to amend their complaint to allege "independent, separate claims for damages . . . with specificity."[10]

On December 2, 1996, appellants filed their second amended complaint. Like the earlier complaint, this alleges causes of action for fraud and deceit, conspiracy to defraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil liability for receiving

[10]In pertinent part, the trial court's decision on the initial demurrer stated: "[Appellants] have no standing as a matter of law to pursue any claims for recovery of trust property except claims for aiding and abetting the trustee's breach of trust. In this case [appellants] cannot pursue any such claim for aiding and abetting breach of trust because a successor co-trustee, Robert Moorlach, has been appointed, and is prosecuting the same action against [Merrill Lynch].

"The federal court has ruled that [the County] and its treasurer were trustees as to the funds deposited by public agencies. [*In re County of Orange, supra,* 191 B.R. at p. 1014.] County and Moorlach have alleged, as an alternative basis for recovery in the federal action, that they are trustees of the funds transferred to [Merrill Lynch]. Thus, the issue of whether [Merrill Lynch] should be held liable for the loss of trust funds will be litigated in that action.

"It is true that the federal complaint alleges as the primary basis for County's standing that County's estate is the owner of all claims relating to the loss of trust funds because the funds were so commingled with County's own funds that they cannot be traced to any specific asset. However, these allegations do not constitute a repudiation of the trustee's obligation that would enable [appellants] to litigate the same claims in this action. If the federal court finds that trust funds were so commingled with County's own funds that no tracing is possible, all claims by the trustees or the beneficiaries arising from the loss of trust funds will be subsumed within the claims of the bankruptcy estate. The result is not that [appellants'] claims will be lost, but only that those claims become part of the bankruptcy estate which are being prosecuted by the County on behalf of all the County's creditors.

"Thus, [appellants'] trust claims cannot be prosecuted in this action even if County and Moorlach are not found to be trustees in the federal action. Challenges to the jurisdiction or authority of the successor trustee must be made by [appellants] in the pending federal action.

"[Appellants] may prosecute direct actions to recover damages, other than losses sustained by the trust. To the extent such claims exist they may be independently asserted by [appellants]. However, the damages sought must be other than losses sustained by the trust; which are being prosecuted in the federal action. [Appellants] had made a showing that such independent, separate claims for damages exist, and leave is hereby given to amend their complaint to assert these claims with specificity."

stolen property (Pen. Code, § 496), and violation of RICO, and seeks recovery of $80 million for lost investment principal, interest and consequential damages, together with all fees, profits and commissions realized by Merrill Lynch "which are attributable to [appellants'] own deposits in the [County Pool]," treble and punitive damages. The second amended complaint greatly expands the factual allegations regarding Merrill Lynch's alleged oral and written misrepresentations made directly to appellants, individually and as a group, and makes additional allegations that Merrill Lynch had direct broker-dealer relationships with three of the fourteen appellants: the cities of Milpitas, Mountain View, and Santa Barbara. In addition, the second amended complaint details the terms of the CSA and the Stipulation reserving appellants' right to bring direct claims against third parties, such as Merrill Lynch, and expressly alleges that appellants "are pursuing their direct claims to recover damages," and that "[t]he damages sought by [appellants] are damages other than losses sustained by the trust, which are being prosecuted in the federal action brought by Orange County against Merrill Lynch."

Respondents filed a demurrer to appellants' second amended complaint, again arguing that appellants lacked standing to pursue their claims for recovery of damages attributable to their investments in the Pool trust. The trial court sustained respondents' demurrer without leave to amend, ruling as a matter of law that appellants had failed to allege facts sufficient to state a cause of action against respondents because, as trust beneficiaries, there were no real parties in interest with standing to sue Merrill Lynch for losses attributable to their investments in the Pool trust.[11] Judgment in favor of respondents was entered on March 17, 1997, and this appeal followed.

On June 3, 1998, subsequent to the briefing in this appeal, the County settled its lawsuit against Merrill Lynch for $400 million. As a result of this

---

[11]In pertinent part, the order sustaining respondents' demurrer to the second amended complaint without leave to amend stated: "3. Each of the Causes of Action set forth in [appellants'] Second Amended Complaint fails to state facts sufficient to constitute a cause of action against [respondents] because [appellants] have no standing as a matter of law to pursue against [respondents] claims for losses sustained by the [Pool], a statutory trust, or for damages alleged to arise from losses sustained by the trust.

"4. Even if [appellants] might otherwise have been the real parties in interest with standing to pursue what they have described as 'direct' claims for losses sustained by the [Pool], or for damages alleged to arise from losses sustained by the trust, they cannot pursue any such claim where, as here, Orange County and John Moorlach, the successor/co-trustees of the [Pool], are already pursuing an action against Merrill Lynch for such losses.

"5. [Appellants] did not even attempt to state any claim for damages other than those arising from the losses sustained by the [Pool], as they represented to the Court they could and would do.

"6. The defects in the Second Amended Complaint exist as a matter of law and cannot be cured by amendment. In any event, [appellants] already have amended twice, to no avail. For these reasons, leave to amend is denied."

settlement, appellants will receive the $9 million that the County previously agreed to pay appellants under the Stipulation settling appellants' lawsuit against the County. Pursuant to the County's agreements with appellants in the CSA and Stipulation, the County did not release appellants' direct claims against Merrill Lynch in this action.[12]

## II. STANDARD OF REVIEW

■ A demurrer tests the pleading alone, and not the evidence or the facts alleged. Thus, a demurrer will be sustained only where the pleading is defective on its face. In our review of this judgment of dismissal sustaining a demurrer without leave to amend, we are guided by well-settled principles governing the testing of the sufficiency of a complaint. Although a demurrer makes no binding judicial admissions, it provisionally admits all material issuable facts properly pleaded, unless contrary to law or to facts of which a court may take judicial notice. On the other hand, it does not admit contentions, deductions or conclusions of fact or law alleged in the challenged pleading. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; *Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520]; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 899-903, pp. 357-364.) To the extent there are factual issues in dispute, however, this court must assume the truth not only of all facts properly pled, but also of those facts that may be implied or inferred from those expressly alleged in the complaint. (*White* v. *Davis, supra,* 13 Cal.3d at p. 765; *Marshall* v. *Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339]; *Rose* v. *Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 716 [3 Cal.Rptr.2d 483].)

■ On appeal, the trial court's decision to sustain the demurrer without leave to amend and subsequent judgment are subject to review for abuse of discretion. As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. Nevertheless, where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result. The burden is on the plaintiff to demonstrate the manner in which the complaint might be amended, and the appellate court must affirm the

---

[12]Pursuant to Evidence Code sections 452, subdivision (d), and 459, we take judicial notice of the settlement agreement and release between the County and Merrill Lynch, a copy of which agreement has been provided to this court by Merrill Lynch.

judgment if it is correct on any theory. (Code Civ. Proc., § 472c; *Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; *Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318; *Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942-943 [143 Cal.Rptr. 255].)

### III. DISCUSSION

In sustaining the demurrer to appellants' second amended complaint, the trial court accepted respondents' contention that appellants are not the real parties in interest and, thus, have no standing as a matter of law to pursue claims against Merrill Lynch for losses sustained as a result of their investments in the Pool. Respondents' argument may be summarized as follows: Under California law, the Pool is a statutory trust. (§ 27100.1; *In re County of Orange, supra,* 191 B.R. at pp. 1013-1014.) As depositors in the Pool, appellants are beneficiaries of the trust. Despite attempts to disguise the fact by means of their allegations of "direct claims," appellants' second amended complaint actually seeks recovery for losses they sustained as a result of their investment in the trust—specifically, the $80 million in Pool deposits appellants allege they have not recovered from the County under either the CSA or the Stipulation. Because only the trustee has legal title to any cause of action for injury to trust property, trust beneficiaries such as appellants are not entitled to assert such claims. Thus, respondents' argument concludes, the trial court was correct in sustaining the demurrer to the second amended complaint without leave to amend. For the reasons which follow, we disagree with this argument of respondents.

First, although generally the trustee is the real party in interest with legal title to any cause of action on behalf of or in the name of the trust, under certain circumstances a trust beneficiary may sue third persons who directly participated with the trustee in breaches of trust. Thus, under long-established trust law, trust beneficiaries retain the right to bring claims directly against third parties who have induced the trustee to commit a breach of trust, aided or abetted such a breach by the trustee, or received and retained trust property from the trustee in knowing breach of trust. (*Saks* v. *Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 428 [8 Cal.Rptr.2d 869]; *Pierce* v. *Lyman* (1991) 1 Cal.App.4th 1093, 1101-1110 [3 Cal.Rptr.2d 236]; Rest.2d Trusts, §§ 291-295, 326, pp. 57-73, 124-125; 4 Scott on Trusts (4th ed. 1989) §§ 282, 291, 294.1, pp. 27-28, 77-87, 98-101; Bogert on Trusts (2d ed. rev. 1995) §§ 868-869, 901, pp. 103-123, 304-320; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 164, p. 1017.)

Second, the express provisions of the CSA and the Stipulation between the County and appellants, as well as the allegations of the County's own complaint against Merrill Lynch and the terms of the recent settlement of

that lawsuit, all make it clear that the County, as trustee of the Pool, has expressly ceded to appellants the right to press their direct claims against third parties such as Merrill Lynch, and proceeded against Merrill Lynch *only* as to its own claims and those of the Option A Pool Participants specifically *assigned* to it. Unlike the Option A Pool Participants, appellants specifically did not assign their third party claims to the County and, instead, retained such claims to pursue on their own.

Third, the County, its Pool, and the trust itself are now insolvent debtors under the jurisdiction of the federal bankruptcy court. Federal bankruptcy law preempts any conflicting provisions in section 27100.1 and the California law of trusts. Under federal law, the relationship between Pool Participants and the County is not simply that of beneficiaries and trustee, but has become that of debtor and creditor. As Pool Participants, appellants have obtained claims as general creditors under federal law on all funds they transferred to the Pool and cannot now trace, irrespective of the existence of the trust under California law. (*In re County of Orange, supra,* 191 B.R. at pp. 1013-1018; *In re County of Orange, supra,* 183 B.R. at pp. 605-606; *First Federal of Michigan* v. *Barrow* (6th Cir. 1989) 878 F.2d 912, 915; *In re Bullion Reserve of North America* (9th Cir. 1988) 836 F.2d 1214, 1217-1218.) The bankruptcy court has expressly approved and authorized the CSA, including the provisions under which appellants reserved their rights to assert claims against third parties. By operation of federal bankruptcy law, therefore, appellants' contractual retention of their right to pursue claims against third parties such as Merrill Lynch supersedes any conflicting principle of California trust law.

For each of these reasons, whether considered individually or collectively as a whole, there is no reason in law or equity why appellants may not bring direct claims against Merrill Lynch for losses they suffered by investing in the Pools, on the grounds Merrill Lynch participated with the trustee of the pool in alleged breaches of trust and committed torts directly against appellants themselves. On the basis of the allegations in appellants' second amended complaint, we conclude they have properly stated causes of action for direct claims against Merrill Lynch. The trial court therefore erred in sustaining the demurrer without leave to amend.

### A. *The Law of Trusts*

In attacking the allegations of appellants' second amended complaint, respondents have placed principal reliance on the doctrine of the law of trusts that the trustee of an express trust is the real party in interest with legal title to any cause of action on behalf of or in the name of the trust, and a trust

beneficiary has no legal title or ownership interest in the trust assets. In accordance with this principle, generally a trust beneficiary is not the real party in interest and therefore may not sue in the name of or for the benefit of the trust. (*Saks* v. *Damon Raike & Co., supra,* 7 Cal.App.4th at p. 427; *Botsford* v. *Haskins & Sells* (1978) 81 Cal.App.3d 780, 784 [146 Cal.Rptr. 752]; *Powers* v. *Ashton* (1975) 45 Cal.App.3d 783, 787-788 [119 Cal.Rptr. 729].) Because the County is pursuing its own action against Merrill Lynch for losses incurred by the Pool, respondents argue, appellants may not separately maintain their own lawsuit. The trial court itself relied on this principle in sustaining the demurrer to appellants' second amended complaint without leave to amend.

Respondents overlook the important exceptions to the general rule on which they rely. Thus, it is well established that where a trustee has committed a breach of trust, the trust beneficiaries may prosecute an action against third persons who, for their own financial gain or advantage, induced the trustee to commit the breach of trust; actively participated with, aided or abetted the trustee in that breach; or received and retained trust property from the trustee in knowing breach of trust. (*Saks* v. *Damon Raike & Co., supra,* 7 Cal.App.4th at pp. 427-428 ["The beneficiary may also sue third persons who directly participated with the trustee in breaches of trust"]; *Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1101-1110; Rest.2d Trusts, §§ 291-295, 326, pp. 57-73, 124-125; 4 Scott on Trusts, *supra,* §§ 282, 291, 294.1, pp. 27-28, 77-87, 98-101; Bogert on Trusts, *supra,* §§ 868-869, 901, pp. 103-123, 304-320; 11 Witkin, Summary of Cal. Law, *supra,* Trusts, § 164, p. 1017.) Appellants allege causes of action in their second amended complaint against Merrill Lynch as beneficiaries of the trust Pool pursuing their own *direct claims* against a third party who actively participated in the breach of trust of the County and its former treasurer, Citron. There is ample appellate precedent and scholarly authority for such a suit by trust beneficiaries where the third party has reaped financial advantages by participating in a trustee's breach of fiduciary duty, as Merrill Lynch is alleged to have done here.

The rights of trust beneficiaries vis-à-vis third parties who participate in a breach of trust ultimately derive from the obligations of the trustee himself. The violation by a trustee of any duty owed to the beneficiaries of the trust constitutes a breach of trust. (Rest.2d Trusts, § 201, pp. 442-444.) Such duties include the duty of loyalty, the duty to avoid conflicts of interest, the duty to preserve trust property, the duty to make trust property productive, the duty to dispose of improper investments, and the duty to report and account. (*Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1102-1103; Prob. Code, §§ 16002-16006, 16060; Rest.2d Trusts, §§ 175-176, 181, 230-231,

pp. 380-383, 391-392, 544-555.) The standard of care with respect to trust investments is the "prudent investor" rule. (*Pierce* v. *Lyman, supra,* 1 Cal.App.4th at p. 1103; 11 Witkin, Summary of Cal. Law, *supra,* Trusts, § 79, p. 958.) The beneficiaries of a trust may sue a trustee to recover profits or recoup losses resulting from a trustee's breach of any of these duties. (*Work* v. *County Nat. Bank etc. Co.* (1935) 4 Cal.2d 532, 536 [51 P.2d 90]; *Pierce* v. *Lyman, supra,* 1 Cal.App.4th at p. 1103.)

At common law, the beneficiaries of a trust could also sue third parties who participated with a trustee in such a breach of the trustee's duties. Thus, as set forth in the Restatement, a beneficiary could bring a direct action to compel a third party either to restore trust property that had been transferred by the trustee with notice to the third party of the breach of trust, or to pay the value of such trust property if the third party had disposed of it. (Rest.2d Trusts, §§ 291-295, pp. 57-73.) In addition, "[a] third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust." (Rest.2d Trusts, § 326, p. 124.) Significantly, the comments to section 326 of the Restatement of Trusts apply this principle to the precise factual situation at issue in this case, in noting that where a trustee purchases speculative securities through a stockbroker who has knowledge that it is a breach of trust for the trustee to purchase such securities, "the broker is liable for participation in the breach of trust." (Rest.2d Trusts, § 326, com. a, p. 124.)[13]

Under California law, the right to sue a third party for participating in a fiduciary's breach of trust is limited to situations in which the third party was acting for personal gain or in furtherance of his or her own financial advantage. (*Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1103-1106, citing *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 46-48 [260 Cal.Rptr. 183, 775 P.2d 508] [*Doctors' Co.*].) The basic principle remains the same in

---

[13]The comment to section 326 of the Restatement Second of Trusts reads in pertinent part: "*a. Knowledge of breach of trust.* If a third person participates with the trustee in committing a breach of trust, knowing that he is committing a breach of trust, he is liable to the beneficiary for participation in the breach of trust.

"Thus, if the trustee directs an agent to sell trust property, which the agent knows the trustee is not authorized to sell, and he does sell it, he is liable for participation in the breach of trust.

"Similarly, if the trustee purchases through a stockbroker securities which it is a breach of trust for him to purchase and the broker knows that the purchase is in breach of trust, the broker is liable for participation in the breach of trust.

"*b. Notice of breach of trust.* If a customer deposits with a broker securities standing in the name of the customer as trustee as security for speculative transactions on margin, the broker is chargeable with notice that the customer is a trustee and is committing a breach of trust." (Rest.2d Trusts, § 326, coms. a, b, p. 124, italics in original.)

this state as under the common law, however. As long as the third parties were acting to further their own individual economic interests, they may be liable for actively participating in a fiduciary's breach of his or her trust. ▮ ▬ ▬ By extension, therefore, trust beneficiaries may sue third parties who participated with a trustee in alleged breaches of trust, as long as the third parties' participation was both active and for the purpose of advancing their own interests or financial advantage. (*Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1103-1106 [trust beneficiaries may sue third parties who actively participated with trustee in breaches of trust for third parties' own personal gain].)[14]

These principles are also restated in the leading treatises on the law of trusts. As respondents point out, of course, Scott on Trusts does reiterate the general rules that the trustee is the real party in interest representing the interests of the trust and the trust beneficiaries; the interests of the beneficiaries are protected against third persons acting adversely to the trust through proceedings brought by the trustee and not by the beneficiaries; and the beneficiaries cannot maintain a suit against adverse third parties as long

---

[14]As a general rule, a cause of action for civil conspiracy will not arise if the alleged coconspirator, even though a participant in some agreement underlying the injury, was not personally bound by any duty violated by the wrongdoing. (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-514 [28 Cal.Rptr.2d 475, 869 P.2d 454] [*Applied Equipment*]; *Doctors' Co, supra,* 49 Cal.3d at p. 44.) Recently, a division of the Second District Court of Appeal held in *Kidron* v. *Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571 [47 Cal.Rptr.2d 752] (*Kidron*) that a party not in a fiduciary relationship with the plaintiff cannot be held liable for conspiracy to breach a duty owed only by a fiduciary. For this conclusion, *Kidron* specifically relied on the Supreme Court's holding in *Applied Equipment* that because civil conspiracy is not an independent tort, it cannot create a duty or abrogate an immunity. (*Applied Equipment, supra,* 7 Cal.4th at pp. 510-514; *Kidron, supra,* 40 Cal.App.4th at pp. 1597-1598.)

In our opinion, the cited opinions are not in conflict with the common law principle affirmed in *Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pages 1103-1106. Generally it is true, as *Kidron* states, that there is no cause of action for civil conspiracy against agents, employees or other persons not personally bound by the duty allegedly violated by the wrongdoing of the party which did have that duty. However, the Supreme Court made clear in *Doctors' Co.* that there is an *exception* to this general principle applicable when the agents, employees or other third parties *are acting for their own individual advantage* in conspiring or participating in the tortious acts of the party with the principal duty. (*Doctors' Co., supra,* 49 Cal.3d at pp. 44-47.) It was on this exception to the general rule that *Pierce* v. *Lyman* based its holding that third parties *may* be held liable for actively participating in a fiduciary's breach of trust, *if* the third parties were acting in furtherance of their own individual advantage or financial gain. (*Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1104-1105.) To the extent *Kidron* does not acknowledge this exception and purports to establish an absolute rule barring any cause of action against a nonfiduciary for aiding and abetting a breach of fiduciary duty even where the nonfiduciary was acting for his or her own individual advantage, we respectfully disagree with the opinion in that case. (*Doctors' Co, supra,* 49 Cal.3d at pp. 46-47; *Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1104-1106.)

as the trustee is ready and willing to undertake the necessary proceedings. (4 Scott on Trusts, *supra,* §§ 281-282, pp. 21-28.)

However, in the same section restating these general principles, the Scott treatise states: "Very different is the situation where the third person does not act adversely to the trustee but participates with the trustee in a breach of trust. Thus if the trustee in breach of trust transfers trust property to a third person who knows of the breach of trust, the third person holds the property on a constructive trust for the beneficiaries. Here the third person commits a wrong directly to the beneficiaries; he is interfering with the trust relationship. If he induces to trustee to commit a breach of trust, he incurs a liability to the beneficiaries, much as a person who induces a breach of contract incurs a liability . . . . In such a case, it is true, the trustee is also permitted to sue the third person, *but primarily it is the beneficiaries who are wronged and who are entitled to sue. . . .*" (4 Scott on Trusts, *supra,* § 282, p. 28, fns. omitted, italics added.) Because in these circumstances the wrong committed by the third party is a wrong to the beneficiaries and not to the trustee, the third party incurs a liability to them directly, and the beneficiaries themselves can maintain a suit against the third party. ". . . It is true that the trustee, if he can be subjected to the jurisdiction of the court, should ordinarily be joined as a party. But this is in order that the whole controversy may be determined in a single suit, and not because the right of the beneficiaries against the [third party] is only a derivative right through the trustee. Primarily the liability of the [third party] is to the beneficiaries rather than to the trustee, and the right of the beneficiaries against the [third party] is a *direct right* and not one that is derivative through the trustee." (*Id.,* § 294.1, pp. 98-100, fn. omitted, italics added.)[15] Like the Restatement, Scott specifically notes that securities and stockbrokers employed by a trustee may

---

[15]Among the many other parallel statements of this basic principle throughout Scott on Trusts are the following: "If a trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee can be compelled to restore the property to the trust, or to pay its value or its proceeds if he has disposed of it. Ordinarily the beneficiaries of the trust have an option to pursue any of these remedies. They have a somewhat similar choice of remedies against the trustee. . . ." (4 Scott on Trusts, *supra,* § 291, p. 77, fn.. omitted.)

"Similarly, in the converse situation, where a trustee purchases property from another who has notice that the trustee is committing a breach of trust in making the purchase, the seller takes the purchase money subject to the trust and can be compelled to restore it. If the purchase money is still held by the seller, the beneficiaries of the trust are entitled to specific restitution. . . ." (4 Scott on Trusts, *supra,* § 291.1, p. 78, fn. omitted.)

"The principles applicable to the choice of remedies against the trustee who has committed a breach of trust are applicable also against a person to whom the trustee has transferred trust property in breach of trust, where the transferee has notice of the breach of trust. If there is a single beneficiary and he is not under an incapacity, he can pursue any of the appropriate remedies discussed in the preceding sections, either to recover the property or its value or its

be liable for participation in a breach of trust if they have notice that the trustee is committing a breach of trust in undertaking securities transactions.[16]

The discussion of this issue in Bogert on Trusts is to the same effect. Thus, Bogert emphasizes that a third party who participates with a trustee in a breach of trust is liable to the trust beneficiaries, whether the third party actually knows or "should have known that the act was wrongful," and cites "numerous" examples of cases "in which a third party who has assisted a trustee in committing a breach of trust has been held liable in a suit by the beneficiary or by his representative . . . ." (Bogert on Trusts, *supra*, § 868, pp. 104, 109, fn. omitted.)[17] Like both Scott and the Restatement, Bogert emphasizes that a third party who "by any act whatsoever assists the trustee in wrongfully transferring the benefits of the trust property to the trustee, another person, or the alleged participant, or aids in destroying or injuring that property," may be liable to the beneficiaries directly for participation

proceeds. If there are several beneficiaries and none of them is under an incapacity and they all agree on a particular remedy, they are entitled to that remedy. . . ." (4 Scott on Trusts, *supra*, § 291.7, p. 86, fn. omitted.)

"A third person is liable for participation in a breach of trust where he receives a transfer of trust property, whether as purchaser or mortgagee or pledgee, if he has notice that the transfer is made in breach of trust. . . .

". . . If the third person has knowingly assisted the trustee in committing a breach of trust, he is liable for participation in the breach of trust. . . ." (4 Scott on Trusts, *supra*, § 326, p. 291, fn. omitted.)

[16]"A somewhat similar question arises where a trustee employs a stockbroker to make purchases and sales of securities for the trust.

"*Where the broker has notice.* If the broker has notice that the trustee is committing a breach of trust in making the purchases or sales, he is liable for participation in the breach of trust. The broker is liable where he has actual knowledge or where the circumstances show that the trustee is committing a breach of trust in making the purchase or sale through the agency of the broker." (4 Scott on Trusts, *supra*, § 326.2, p. 296, fn. omitted, italics in original.)

[17]"Instances are numerous in which a third party who has assisted a trustee in committing a breach of trust has been held liable in a suit by the beneficiary or by his representative, for money damages, or for money damages with a lien on the trust res or its product, or the third party has been ordered to replace the trust property in kind.

". . . . . . . . . . . . . . . . . . . . . . .

"The trustee and third party may be joined in a suit for recovery of the value of the lost trust property. The liability of the trustee and third party is joint and several. . . .

". . . . . . . . . . . . . . . . . . . . . . .

"A person who, in good faith, aids the trustee in an act which is a breach of trust, may be held liable to the beneficiary for his conduct, when he should have known that the act was wrongful." (Bogert on Trusts, *supra*, § 868, pp. 104-109, fns. omitted.)

"Just as every owner of a legal interest has the right that others shall not, without lawful excuse, interfere with his possession or enjoyment of the property or adversely affect its value, so the beneficiary, as equitable owner of the trust res has the right that third persons shall not knowingly join with the trustee in a breach of trust. One acting with a trustee in

in a breach of fiduciary duty. (*Id.*, § 901, p. 313.) Finally, in language particularly pertinent to the facts of the case before us, Bogert specifically states that third party liability directly to beneficiaries may be based on "aiding the trustee to deceive the beneficiaries of an investment trust as to the financial stability of the trust," or "assisting the trustee to speculate with the trust funds . . . ." (*Id.*, § 901, pp. 315, 317, fns. omitted.)[18]

 In short, trust beneficiaries may bring suit on their direct claims against third persons who have actively participated with a trustee in a breach of trust for their own financial advantage, whether by inducing, aiding or abetting the trustee's breach of duty, or by receiving trust property from the trustee in knowing breach of trust. (*Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1103-1106.) Ordinarily, when a third party acts to further his or her own economic interests by participating with a trustee in such a breach of trust, the beneficiary will bring suit against *both* the trustee and the third party. However, it is not necessary to join the trustee in the suit, because "primarily it is the beneficiaries who are wronged and who are entitled to sue. . . ." (4 Scott on Trusts, *supra,* § 282, p. 28.) The liability of the third party is to the beneficiaries, rather than to the trustee, "and the right of the beneficiaries against the [third party] is a *direct right* and not one that is derivative through the trustee." (*Id.* § 294.1, pp. 99-100, italics added.)

Scott notes that, at least in the case of a trustee transferring trust property to a third party who is not a bona fide purchaser, if the breaching trustee is thereafter removed and a successor trustee is appointed, the successor trustee will himself maintain the action against the third party. "In such a case it would seem that the beneficiaries cannot maintain a suit against the

---

performing an act that such person knows or should know is a breach of trust becomes a participant in the breach and subject to liability for any damages that result or to restore the trust property traced to such person's possession.

" . . . . . . . . . . . . . . . . . . . . . . .

"The wrong of participation in a breach of trust can be divided into two elements: (1) an act or omission which furthers or completes the breach of trust by the trustee; and (2) knowledge at the time that the transaction amounted to a breach of trust, or the legal equivalent of such knowledge." (Bogert on Trusts, *supra,* § 901, pp. 304-311, fns. omitted.)

[18]"[S]ome illustrations may be given of other acts which have been held to amount to participation, due to the wrongful character of the conduct of the fiduciary and the notice which the third person had, or should have had, with reference thereto. Thus liability as a participant has been decreed by reason of the following acts: aiding the trustee to deceive the beneficiaries of an investment trust as to the financial stability of the trust; . . . [and] assisting the trustee to speculate with the trust funds or to use them for other illegal purposes." (Bogert on Trusts, *supra,* § 901, pp. 315-318, fns. omitted.)

transferee unless the successor trustee has refused to sue or is unavailable." (4 Scott on Trusts, *supra,* § 294.4, pp. 104-105, fn. omitted.) Respondents contend that this principle applies here. They insist a successor trustee has been appointed in the person of County Treasurer Moorlach, that successor trustee is suing Merrill Lynch, and appellants therefore cannot maintain a separate lawsuit against respondents in this case.[19]

It is true the County has pursued a lawsuit on behalf of the Pool against Merrill Lynch and that Moorlach was also named as a plaintiff in that action, "in his official capacity as the Treasurer-Tax Collector of the County." Nevertheless, this is not an ordinary trust case. Here, the bankruptcy court has specifically held that the County itself was the trustee of the Pool, and the County Treasurer, as a public officer of the County, was merely an agent who represented the County in carrying out its statutory obligations. Thus, although there is a successor treasurer, there actually is *no* "successor" trustee—the County has always itself been and still is in fact *the* trustee of the Pool. Moorlach, the present treasurer and successor to former Treasurer Citron, is simply a representative or agent of the trustee County. Like Citron, who represented the County in carrying out its trust obligations with regard to the Pool, Moorlach "retain[s] his status as a county officer while performing these trustee duties." (*In re County of Orange, supra,* 191 B.R. at p. 1014.)[20] Under California law and the decision of the bankruptcy court, then,

---

[19]Respondents' brief states: "A successor trustee—here, the County through its current Treasurer, John Moorlach—has been appointed, and that successor trustee is suing Merrill Lynch. Indeed, the new trustee is suing Merrill Lynch for, among other things, aiding and abetting an alleged breach of fiduciary duty by the predecessor trustee, Robert Citron . . . —precisely the claim the [second amended complaint] seeks to duplicate in its Fifth Cause of Action. If Appellants for some reason are not content with the manner in which that claim is being prosecuted by their trustee, their remedy . . . is to seek to join in that action, not to sue Merrill Lynch separately. [Citation.] [¶] In sum, because the claims [against Merrill Lynch] in the County Action are being pursued by a successor trustee, Appellants cannot maintain a separate cause of action for aiding and abetting a breach of fiduciary duty by the former trustee, much less maintain the other causes of action in the [second amended complaint]."

[20]In its decision *In re County of Orange*, the bankruptcy court denied Merrill Lynch's motion to dismiss the County's lawsuit for failure to state claims upon which relief could be granted. The bankruptcy court opinion contains a thorough discussion of this point, which is highly material to the issues before us on this appeal and serves to answer Merrill Lynch's similar arguments here.

"Merrill Lynch asserts in the Motion [to dismiss] that the Complaint fails to state claims upon which relief can be granted, because the securities involved in the underlying transactions were never the property of the County. Merrill Lynch argues that California Government Code ([Gov. Code,]) § 27100.1 requires that the County Treasurer, not the County, hold in trust all funds deposited by non-County participants in the investment [Pool] . . . and the

it is the County *itself*, not the individual currently occupying the office of treasurer, which bears the responsibilities and obligations of trustee.[21]

trust nature of these funds is not destroyed by the County's bankruptcy filing regardless of the level of commingling of County and non-County funds in the [Pool], the solvency of the County, or the inability to trace the trust funds in the [Pool]. [Citation.]

" . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"State law determines whether a trust exists in federal bankruptcy proceedings. [Citations.]

"Merrill Lynch and [the County] agree that when public entities deposited funds into the County treasury, a trust was created under [Gov. Code,] § 27100.1; however, the parties disagree over who is the trustee of those funds. Merrill Lynch asserts that under § 27100.1, the County Treasurer alone is the trustee. It relies primarily on the language of § 27100.1 which states that 'those funds [deposited by the public entity] shall be deemed to be held in trust by the county treasurer.' [Gov. Code,] § 27100.1. . . . The County responds that 'when a California statute imposes a duty on a county official, that duty is imposed on the County itself.' [Citation.]

"I hold that under [Gov. Code,] § 27100.1 a trust was created when public entities deposited their funds into the County treasury, and the County was either an express or implied trustee of those funds under California law.

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"A county treasurer is an officer of the county for which he/she is appointed or elected. [Gov. Code, § 24000, subd. (f)]. . . . In its landmark case defining public/county officers, the California Supreme Court held: [¶] 'A public officer is a public agent, and as such acts only on behalf of his principal, the public, whose sanction is generally considered as necessary to give the act performed by the officer the authority and power of a public act or law. The most general characteristic of a public [county] officer which distinguishes him from a mere employee, is that a public duty is delegated and intrusted [sic] to him, as agent, the performance of which is an exercise of a part of the governmental functions of the particular political unit for which he, as agent, is acting. . . .' [*Coulter* v. *Pool* (1921) 187 Cal. 181, 187 [201 P. 120].]

"When Citron received funds pursuant to [Gov. Code,] § 53684, he represented the County in carrying out the trust obligations imposed by § 27100.1 The County's assertion that it was a trustee of those funds is not inconsistent with California law. The County, through its representative, Citron, had express trustee responsibilities to the beneficiaries of the § 27100.1 trust.

"Alternatively, the County is an implied trustee of the § 27100.1 trust. . . .

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . Citron acted as trustee for the public agencies that deposited funds with him under state law. Citron, however, retained his status as a county officer while performing these trustee duties. Section 27100.1 did not require that Citron act solely in his individual capacity while carrying out his responsibilities. Because Citron was an agent for the County during the entire [t]ime [p]eriod, California law imposed trustee responsibilities on the County. [Citations.]" (*In re County of Orange, supra,* 191 B.R. at pp. 1011-1015, fns. and italics omitted.)

[21]The County's own complaint against Merrill Lynch also made this point clear. Thus, the County itself stated that ". . . Moorlach is named as a plaintiff in this action in his official capacity as the Treasurer-Tax Collector of the County for the sole purpose of pursuing any claims asserted herein which the Court finds must be maintained by and in the name of the Treasurer of the County, rather than by and in the name of the County for itself or as trustee or as assignee." The County's complaint alleged that "a county treasurer acts as agent for the county in managing the county's moneys and all other moneys placed in the county treasury. . . . At all relevant times and with respect to all transactions . . . , the only authority

Thus, the County alone has been and still is the trustee of the Pool at all times relevant to this lawsuit. The County's lawsuit against Merrill Lynch has always been expressly limited to the County's own claims and those *assigned* to the County by Pool Participants *other* than appellants. Hence, there is no reason appellants must now defer to the County's lawsuit against Merrill Lynch and forego their independent right as beneficiaries to press their own claims directly against third parties such as Merrill Lynch, who are alleged to have induced, aided, abetted, or knowingly benefited from a breach of trust by the trustee itself.[22]

Moreover, the County, as trustee of the Pool, and appellants, as beneficiaries, have negotiated two separate agreements that specifically address appellants' direct claims against third parties for losses connected with the collapse of the Pool, and explicitly recognize appellants' right to bring their own lawsuits directly against such third parties. These agreements were executed under the jurisdiction of, and with the express approval and authorization of, the bankruptcy court itself. The jurisdiction of that court, and its interpretation of federal bankruptcy law, preempt the California law of trusts whenever there is a conflict. By approving the County's agreements with appellants as part of the bankruptcy plan, the bankruptcy court has specifically authorized this action. We turn now to a consideration of these contractual agreements between the County and the Pool Participants, and the jurisdictional and res judicata implications of the decisions of the federal bankruptcy court in this matter.

---

of former Treasurer-Tax Collector Robert L. Citron . . . to act was in his official capacity as County Treasurer for the County."

". . . In particular, when a county official, including a county treasurer, is held to have responsibilities as a trustee, the county itself has the responsibilities and limitations of a trustee and the county official acts as the agent of the county. At all relevant times and with respect to all trust responsibilities assigned to the County Treasurer, the County had all such responsibilities, including the power to commence claims as trustee with respect to any claims for relief held in trust."

[22]After the principal briefing in this appeal, appellants brought to the attention of this court the fact that the County and Merrill Lynch have recently announced the settlement of the County's lawsuit against Merrill Lynch for a reported $400 million. In accordance with its prior agreements with appellants in the CSA and the Stipulation (see discussion, *post*) the County did not purport to settle or release appellants' separate direct claims against Merrill Lynch. By the same token, the County's settlement did not result in any benefit to appellants beyond the $9 million previously bargained for as part of the price of the Stipulation settling appellants' claims against the *County*. In short, it is now more obvious than ever that the County is not representing appellants' interests as beneficiaries or pressing their claims against Merrill Lynch. Consequently, as even Merrill Lynch acknowledges, no one is pursuing appellants' direct claims except themselves, and they will obtain no recovery from Merrill Lynch on their still unrecovered damages if this lawsuit is not allowed to proceed.

## B. *Agreements Between the County and the Pool Participants*

The County and the "Non-County Pool Participants" negotiated the CSA under the aegis and jurisdiction of the bankruptcy court. The CSA specifically identified the County and the Pool as "debtors" in federal bankruptcy proceedings. In return for the County's rendering to them approximately 77 percent of the funds they had deposited into the Pool, the Pool Participants were required to choose between sharing in any litigation proceeds the County might obtain in its own litigation against such third parties (Option A); or retaining their independent rights to proceed directly against both the County and third parties (Option B).

As Option B Pool Participants, appellants refused to assign to the County *any* of their claims against third parties and, thus, retained their right to pursue such claims independently. By the same token, the County and the Pool itself also reserved and retained their rights to challenge the validity or allowability of any such claims made by Option B Pool Participants, and to assert claims against any third parties or against the Option B Pool Participants themselves.[23] In contrast to the Option B Pool Participants, each settling Option A Pool Participant assigned to the County "any and all" of its Pool-related claims, including any such claims against third parties;[24] and

[23]Section (b) of the CSA provides in pertinent part: "Option B: . . . [E]ach Settling Non-County Pool Participant who elects Option B shall reserve and retain, unimpaired by this Agreement, all rights and claims it may have, if any, against the County and the other County Claimants and their Related Parties, including all claims that the County or any other County Claimant or such Related Party is liable in damages for any and all alleged misconduct . . . of the County, any other County Claimant, the Pools, the Orange County Treasurer or any other officers, officials, employees or agents of the County, any other County Claimant or the Pools, and including specifically with respect to alleged self-dealing by the Orange County Treasurer and other alleged breaches of fiduciary duty, fraud, conversion, misappropriation of funds, negligent investments and other alleged misconduct and the alleged withholding of the funds of such Pool Participants. Each County Claimant and the Pools shall reserve and retain all of its rights: (i) to object to, defend against or otherwise challenge the validity, allowability, amount, priority and any other characteristic of any such reserved right or claim of any Settling Non-County Pool Participant who elects Option B, (ii) to assert any rights, claims and remedies it may have against each Settling Non-County Pool Participant who elects Option B and its Related Parties, and (iii) to seek to subordinate any reserved right, remedy or claim of a Settling Non-County Pool Participant who elects Option B under section 510 of the Bankruptcy Code or any other provision of applicable law. . . ." (Underscore in original.)

[24]Section 12.a. of the CSA provides in pertinent part: "Each Settling Option A Pool Participant . . . hereby assigns, transfers and conveys to the County, to the fullest extent allowed by law without destruction or material impairment thereof, any and all Pool-Related Claims of such Settling Option A Pool Participant . . . against any person or entity which is not a Party to this Agreement and which is not specifically released under the terms of Section 19 and any and all proceeds of such Pool-Related Claims. Such assignments shall vest in the

irrevocably released the County, the Pool, all other Option A Pool Participants, and all third parties from any and all Pool-related claims.[25] The bankruptcy court issued an order expressly authorizing and approving the CSA in its entirety.

After appellants filed their own lawsuit in bankruptcy court against the County pursuant to their reserved rights under Option B, the County and appellants negotiated the Stipulation under the jurisdiction of and with the express approval of the bankruptcy court. As pertinent here, the Stipulation expressly preserved appellants' "direct claims against third parties," and affirmed that the County would neither release any third party from its liability to appellants nor assert any claim to proceeds recovered or found to be recoverable by appellants on such "direct claims." At the same time, the Stipulation reserved the rights of both the County and appellants with regard to their respective third party litigation, and reserved "for future determination whether or to what extent" appellants "can assert any claims against third parties alleged to be owned by or held in any trust which is alleged to be applicable to the deposits of the Settling Option B Pool Participants with the Pools."

Thus, the CSA and the Stipulation both explicitly preserved appellants' rights to pursue their "direct claims against third parties," while retaining the County's own right to assert claims for itself or the Option A Pool Participants against those same third parties. Under these provisions of the CSA and the Stipulation, only the Option A Pool Participants assigned any rights to the County to pursue Pool-related claims on their behalf against third parties; appellants expressly did not do so.

The County's own pleadings in bankruptcy court support appellants' position in this appeal. Contrary to respondents' contention, nothing in the County's second amended complaint against Merrill Lynch indicated that it

County all rights to recovery of Litigation Proceeds for such assigned claims, subject only to the terms provided in this Agreement. Each Settling Option A Pool Participant . . . acknowledges the County's ownership of the claims, rights to recovery and proceeds assigned hereunder and the County's right to prosecute such claims and rights to recover in the County's name, and/or in the name of the assigning Settling Option A Pool Participant."

[25]Section 19.a. of the CSA provides in pertinent part: "Each Settling Option A Pool Participant hereby fully, finally and forever irrevocably releases, relieves, quitclaims, and discharges the County, . . . the Pools, each other Settling Option A Pool Participant and all the County's, the Pool's, . . . and each such other Settling Option A Pool Participant's Related Parties from, and waives and relinquishes, any and all Pool-Related Claims which such Settling Option A Pool Participant, or any person or entity claiming from, through, or under such Settling Option A Pool Participant, ever had, now has, or hereafter can, shall, or may have against the County, the Pools, . . . any other Settling Option A Pool Participant or any of the County's, the Pool's, . . . and each such Settling Option A Pool Participant's Related Parties . . . ."

purported to make claims on behalf of appellants or the Option B Pool Participants. To the contrary, the County's complaint specifically stated that, "[p]ursuant to the CSA," it was asserting "any and all 'Pool-Related Claims' against third parties" as the "assignee" of the Option A Pool Participants. The County's lawsuit against Merrill Lynch made no mention of asserting any claims on behalf of Option B Pool Participants such as appellants.[26]

Respondents argue, however, that neither the CSA nor the Stipulation gives appellants any rights to pursue claims against third parties separately or apart from the County as trustee of the Pools. Specifically, respondents point to the provisions in the Stipulation in which (a) the parties "reserve for future determination whether or to what extent the Settling Option B Pool Participants can assert any claims against any third parties alleged to be owned by or held in any trust which is alleged to be applicable to the deposits of the Settling Option B Pool Participants with the Pools"; and (b) the County reserved its right to oppose any attempt by appellants to join the County in third party litigation.

■ Any contract must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable. (Civ. Code, § 1641; Code Civ. Proc., § 1858; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 686, pp. 619-620.) Courts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless. (*New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 81-82 [237 P.2d 510]; *Titan Corp.* v. *Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 473-474 [27 Cal.Rptr.2d 476].) The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636; *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; 1 Witkin, Summary of Cal. Law, *supra*, Contracts,

---

[26]The County's second amended complaint against Merrill Lynch did allege "[i]n the alternative" that "to the extent the Court determines that the claim[s] alleged herein may only be asserted on behalf of a trust, in whole or in part, then such claims are asserted by the County as trustee on behalf of the trust," and that "[t]he precise amount of restitution owing from Merrill Lynch to the County as trustee is to be proven at trial." This alternative allegation does not undermine appellants' arguments on this appeal. Instead, it underscores the fact that the County's central allegation in its own complaint against Merrill Lynch was that it was suing Merrill Lynch as the *assignee* of the claims of the Option A Pool Participants. It is significant, moreover, that the bankruptcy court has never determined the claims against Merrill Lynch "may only be asserted on behalf of a trust." To the contrary, the bankruptcy court has included in its orders and bankruptcy plan the agreements between the County and appellants recognizing appellants' right to pursue their direct claims against third parties.

§ 684, pp. 617-618.) The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent acts and conduct of the parties. (Civ. Code, §§ 1635-1656; Code Civ. Proc., §§ 1859-1861, 1864; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 761 [128 P.2d 665]; *Southern Cal. Edison Co.* v. *Superior Court* (1995) 37 Cal.App.4th 839, 851 [44 Cal.Rptr.2d 227]; *Hernandez* v. *Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1814 [34 Cal.Rptr.2d 732]; *General Motors Corp.* v. *Superior Court* (1993) 12 Cal.App.4th 435, 442 [15 Cal.Rptr.2d 622]; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, §§ 688-689, pp. 621-623.)

▄▄▄ Applying these rules of contractual interpretation, we conclude that, contrary to respondents' assertion on appeal, the provisions of the CSA and Stipulation reserving the County's own rights to pursue third parties do not undercut or take away the rights reserved by appellants elsewhere in those agreements. In the first place, we note the statement in paragraph 1 of the Stipulation reserving for "future determination" appellants' power to "assert any claims against any third parties alleged to be owned by or held in any trust which is alleged to be applicable to the deposits of the Settling Option B Pool Participants with the Pools" is somewhat ambiguous. As written, the lengthy subordinate clause "alleged to be owned by or held in any trust," etc., most logically refers to and modifies the immediately preceding phrase "any third parties," and not the earlier phrase "any claims." If so read, the provision clearly has no relevance in this case, where appellants' claims are against Merrill Lynch and entities associated with it, none of which is a third party "alleged to be owned by or held in any trust."

Even if this sentence is read such that the subordinating clause refers to and modifies the entire phrase "any claims against any third parties," it must still be construed in light of the *immediately preceding* sentence expressly stating that the parties "*intend* to *clarify* that the Settling Option B Pool Participants [appellants] *can preserve* their *direct claims against third parties.*" (Italics added.) Reading these two sentences together in context as such, we interpret them simply to mean that the parties recognize appellants' right to assert claims directly against third parties, without purporting to decide whether the law of trusts will allow appellants to do so when the County also maintains its right to make identical claims as trustee of the Pool. Interpreted in this way, the provision does not render meaningless the Stipulation's reservation of appellants' right to pursue direct claims against third parties. Instead, it simply leaves for "future determination," necessarily by the courts, the effect of applicable trust law on this reservation of rights.

Indeed, it is that "future determination" which it falls upon us to make in this very case.

Respondents seriously misinterpret the provision in paragraph 11(c) of the Stipulation reserving the County's right to oppose any motion by appellants to join the County in a third party action.[27] This provision is concerned with the impact of the automatic stay in bankruptcy, not appellants' property interests in or rights to pursue direct claims against third parties such as Merrill Lynch. Rather than contesting appellants' rights or property interests in such direct claims, the provision merely states that the County reserves the right to oppose any attempt by appellants to seek relief from the automatic stay in order to name the County as an additional plaintiff or defendant in third party litigation.

This provision, and all the other provisions in the Stipulation reserving the County's rights to bring claims against third parties on its own account or on behalf of the Option A Pool Participants, must be interpreted in harmony with the other provisions in the Stipulation expressly and repeatedly reserving appellants' rights to pursue their own litigation against third parties and disclaiming any assertion by the County of claims to proceeds recovered or found recoverable by appellants on such direct claims. Interpreting these provisions as a whole, as we must, we conclude it was the parties' intention that appellants be permitted to pursue their direct claims against third parties such as Merrill Lynch as freely as possible, given the constraints and considerations imposed by the bankruptcy court's jurisdiction over the

---

[27]Paragraph 11 of the Stipulation provides in pertinent part: "(a) The Settling Option B Pool Participants agree that the automatic stay in the County Chapter 9 Case arising under . . . the Bankruptcy Code applies to any effort by any Option B Pool Participant to name the County or any of its officers or inhabitants released in this Stipulation as a nominal party or otherwise in any action in respect of Pool-Related Claims or Excepted Claims . . . .

"(b) The Settling Option B Pool Participants agree that any injunction included in, or contained in a separate order entered substantially contemporaneously with, the Confirmation Order containing provisions substantially as specified in Section VI.I.2 of [the bankruptcy court's Second Amended Plan of Adjustment (the Plan)] (the 'Plan Injunction') shall enjoin any effort by any Option B Pool Participant to name the County or any of its officers or inhabitants released in this Stipulation as a nominal party or otherwise in any action in respect of Pool Related Claims or Excepted Claims, including but not limited to, the Option B Third Party Pending Actions.

"(c) The Settling Option B Pool Participants reserve their respective rights to file a regularly noticed motion with the bankruptcy court seeking relief from the automatic stay or the Plan Injunction in order to name the County or any of its officers or inhabitants as nominal party defendants or plaintiffs in an action subject to such stay or Plan Injunction, including an Option B Third Party Pending Action. The County reserves all of its rights to oppose any such motion. For purposes of seeking relief from the Plan Injunction, an Option B Pool Participant would be required to demonstrate cause sufficient for granting relief from the automatic stay including, without limitation, the existence of a property interest in the claims sought to be recovered in the third party litigation."

County and the County's reservation of its own claims against third parties on behalf of itself and the Option A Pool Participants.[28] In short, the CSA, the Stipulation and the admissions of the County in its own pleadings establish the *intent* of the County that appellants retain the right to press their claims against Merrill Lynch directly.

### C. *Federal Bankruptcy Law*

Equally important to our consideration of the legal sufficiency of appellants' second amended complaint against Merrill Lynch is the impact of federal bankruptcy law in general and the specific holdings of the bankruptcy court with respect to the County's position as trustee of the Pools and appellants' position as beneficiaries. For several reasons, the position of the Pool and the County itself as insolvent debtors under the jurisdiction of the federal bankruptcy court tends further to support appellants' standing to pursue their claims against respondents, and the viability of their second amended complaint.

First, as noted, the bankruptcy court has expressly authorized and approved both the CSA and the Stipulation in their entirety. Thus, insofar as any provisions in these agreements authorize appellants to proceed directly against third parties on Pool-related claims despite appellants' status as beneficiaries, such provisions must be treated as having received the endorsement and sanction of the bankruptcy court itself. The orders of the bankruptcy court adopting the CSA and the Stipulation establish that appellants have the right to pursue their direct claims against third parties such as Merrill Lynch, and that the County will not assert any claim to or seek

---

[28]Paragraph 10 of the Stipulation provides in·pertinent part: ". . . The County shall not assert any claim to any proceeds recovered or determined by a court to be recoverable by Settling Option B Pool Participants, if any, on such direct claims. . . ."

Paragraph 13(a) of the Stipulation provides in pertinent part: "[N]othing contained herein shall release (i) any claims [of appellants] against, or rights or obligations of, any party arising from or specifically reserved in this Stipulation, [or] (ii) any claims or rights [of appellants] against any third party reserved under this Stipulation . . . ."

Paragraph 15 of the Stipulation provides in pertinent part: "Except as provided in Paragraph 11, nothing contained in the Modified Plan or the Confirmation Order [of the bankruptcy court] shall be deemed to impair or adversely affect any right or claim reserved by the Settling Option B Pool Participants in this Stipulation; and the Plan Injunction shall not be construed to restrain or impair any right or claim of any Option B Pool Participant against any third party not released in this Stipulation."

Paragraph 18 of the Stipulation provides in pertinent part: "Nothing contained in this Stipulation shall affect the rights or positions of the County with respect to the claims that it asserts for itself and/or on behalf of the Option A Pool Participants in litigation against third parties now pending or hereafter initiated. Nothing contained in this Stipulation shall affect the rights or positions of any *Settling Option B Pool Participant* with respect to any claims they may assert in litigation against third parties now pending or hereafter initiated."

reimbursement of proceeds recovered by appellants, or determined recoverable by them. This determination is binding and res judicata in this action. (11 U.S.C. § 1141(a); *Levy v. Cohen* (1977) 19 Cal.3d 165, 172-174 [137 Cal.Rptr. 162, 561 P.2d 252] [a bankruptcy court order confirming an arrangement or agreement between the parties in bankruptcy is res judicata in any subsequent state court action]; *In re Kelley* (Bankr. 9th Cir. 1996) 199 B.R. 698, 702-703 [a confirmed plan in bankruptcy is binding on the parties, and operates to preclude the assertion of issues arising out of the prebankruptcy petition relationship of the parties that were or could have been raised earlier]; *In re Bowen* (Bankr. S.D.Ga. 1994) 174 B.R. 840, 847 [the contents of an arrangement or plan approved by a bankruptcy court are res judicata and binding for all purposes, and may not be relitigated by the parties even if arguably contrary to applicable law].)[29]

 Second, as previously discussed, the bankruptcy court specifically held that the County itself is and has always been the trustee of the Pool. Even though the County Treasurer *acts* as trustee under section 27100.1, he is merely the agent and representative of the County in this respect. (*In re County of Orange, supra,* 191 B.R. at pp. 1011-1015.) Thus, even though the individual (Citron) who dealt with appellants as the County's agent for the Pool under section 27100.1 has now been replaced as County Treasurer by another individual (Moorlach), the bankruptcy court has determined that it is the *County* which has always held in trust all funds deposited by appellants in the Pool. In short, the identical trustee of the Pool at the time appellants deposited their funds is still the trustee. That same trustee has expressly stipulated that appellants may bring their own direct claims against Merrill Lynch pursuant to the authority of the bankruptcy court. That trustee, of course, is the County. For purposes of this action, therefore, there is no "successor trustee" to the original trustee of the Pool, and appellants may proceed directly against third parties such as Merrill Lynch alleged to have participated in breaches of trust with the trustee of the Pool.[30]

Third, the bankruptcy court has held that federal bankruptcy law preempts any conflicting provisions of section 27100.1 or the California law of trusts

---

[29]Thus, the trial court erred in its November 5, 1996, statement of decision sustaining the initial demurrer to appellants' first amended complaint with leave to amend, when it stated that appellants' "trust claims cannot be prosecuted in this action even if County and Moorlach are not found to be trustees in the federal action" because the bankruptcy court has sole jurisdiction over the parties and the trust *res*. As seen, the bankruptcy court *itself* has approved the County's agreements and stipulations with appellants as part of the bankruptcy plan, thereby authorizing appellants to pursue the instant lawsuit against Merrill Lynch.

[30]For this reason, the trial court also erred in the November 5, 1996, statement of decision when it stated that appellants "have no standing as a matter of law to pursue any claims for recovery of trust property" based on aiding and abetting the trustee's breach of trust, because "a successor co-trustee, Robert Moorlach has been appointed, and is prosecuting the same action" against Merrill Lynch. Although Moorlach is the successor to County Treasurer

with regard to the debtor-creditor status of the County and trust depositors such as appellants. (*In re County of Orange, supra,* 191 B.R. at pp. 1013-1018; *In re County of Orange, supra,* 183 B.R. at pp. 605-607.) Thus, for purposes of federal bankruptcy law, the County Pool is a debtor and a debtor-creditor relationship exists between the Pool and its depositors, even though the Pool is also a trust and the Pool Participants are trust beneficiaries under section 27100.1. "[A] [Pool Participant] obtained a claim upon the transfer of funds to the [Pool] irrespective of the existence of the trust. [Citation.] Simultaneously, the [Pool] has a debt on that claim, thereby creating a debtor-creditor relationship. [¶] The [Pool] also has debts to its participants even if the [Pool] is a trust because participants cannot trace their funds in the [Pool]. . . ." (*In re County of Orange, supra,* 183 B.R. at p. 606.) In the County's lawsuit against Merrill Lynch, the bankruptcy court specifically rejected Merrill Lynch's contention that the nature of the Pool as a trust under section 27100.1 has not been affected by the County's bankruptcy regardless of the level of commingling of funds in the Pools, the solvency of the County, or the inability of the Pool Participants to trace their trust funds in the Pool. Instead, the bankruptcy court upheld the County's position that when an insolvent trustee-debtor controls assets consisting of commingled funds of the debtor and the trust itself, the assets are "property of the debtor" subject to the equitable jurisdiction of the bankruptcy court to ensure appropriate distribution to the debtor's general creditors. When a trustee debtor is insolvent and the beneficiaries cannot trace their funds, the beneficiaries stand in the position of general creditors despite any conflicting provisions of section 27100.1.[31] (*In re County of Orange, supra,* 191 B.R. at pp. 1012-1018.)

Citron and, as such, is *a* "successor trustee" under section 27100.1, there is *no successor* to the County itself, which was trustee of the Pool at the time appellants deposited their funds therein and still remains trustee of the Pool in the current proceedings under the jurisdiction of the bankruptcy court.

[31]"On its face, § 27100.1 creates a trust for funds deposited with a county treasurer by non-county entities irrespective of conflicting federal bankruptcy law. In essence, § 27100.1 seeks to establish a priority for non-county trust participants regardless of the claims other county creditors might have to the same assets. This directly conflicts with federal bankruptcy law and the goal of a fair and equitable distribution to all creditors of a bankrupt's estate. [Citations.]

"Under federal bankruptcy law, a creditor beneficiary of an insolvent, trustee debtor must be able to trace its funds otherwise the funds become property of the debtor. [Citations.] . . .

"[A] beneficiary of an insolvent, trustee debtor must be able to trace its funds in order to claim any property of the debtor. Absent this tracing, all the funds shall be treated as property of the debtor to guarantee the equal treatment of creditors under the Bankruptcy Code (the 'Code'). [Citation.] When a trustee debtor is insolvent and the beneficiaries cannot trace their funds, the beneficiaries must stand in the position of general creditors. [Citations.] Any other result would destroy the level playing field for creditors established by the Code.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Thus, because they cannot trace the funds they invested in the Pool, appellants have the status of general creditors of the County and the Pool irrespective of the existence of the trust. By operation of federal law, then, the relationship between the County and appellants is no longer that of trustee and beneficiaries, but of debtor and creditors. Because of its basic similarity to an investment fund in which the Pool Participants deposited their funds, the County Pool was never a garden-variety trust instrument in the first place. In the present bankruptcy context, the Pool is even less a typical trust. Appellants' contractual rights to pursue claims directly against third parties such as Merrill Lynch have been specifically authorized and affirmed by the bankruptcy court itself. As such, those rights now have an independent basis in federal law, regardless of any conflicting principle of California trust law.

In a related unpublished decision, *Irvine Ranch Water District* v. *Merrill Lynch & Co., Inc.* (C.D. Cal. Apr. 14, 1997) 1997 U.S. Dist. LEXIS 7030,[32] the federal District Court for the Central District of California denied Merrill Lynch's alternative motions to dismiss or stay a direct action brought by a Pool Participant against Merrill Lynch. As in the instant case, Merrill Lynch argued that Irvine Ranch Water District (Irvine Ranch) was a beneficiary of the Pool trust and not a real party in interest under principles of California trust law, and its action could therefore only be brought by the Pool trustee. The district court rejected Merrill Lynch's argument. Concluding that Irvine Ranch had a "long-standing advisor-advisee relationship with Merrill Lynch through which [it] relied on Merrill Lynch for advice concerning its investment portfolio and financial affairs," and that it had alleged a breach of a duty "separate and distinct from any obligations Merrill Lynch owed to the Pool," the district court held that Irvine Ranch had standing to bring its own action against Merrill Lynch to recover damages for independent torts. (1997 U.S. Dist. LEXIS 7030, *supra*, at p. *4.)

As respondents correctly argue, the *Irvine Ranch* decision is factually distinguishable from the instant case. Of the 14 government entities that make up the appellants herein, only 3 are alleged to have had direct

---

"To the extent that § 27100.1 was intended to eliminate tracing when a debtor trustee is insolvent, it conflicts with federal bankruptcy law. . . .

"When a state law conflicts with federal bankruptcy law, the state law is preempted. [Citation.] Therefore, to the extent that § 27100.1 creates a special class of creditors (i.e., non-County governmental entities) in conflict with the priority scheme in the Code, it is preempted by federal law." (*In re County of Orange, supra*, 191 B.R. at pp. 1015-1017, fns. and italics omitted.)

[32]Pursuant to Evidence Code sections 451, subdivision (a), and 452, subdivision (d), we take judicial notice of this unpublished decision, a copy of which is included in the supplement to appellants' opening brief.

client-broker relationships with Merrill Lynch as their specific investment adviser.[33] In addition, Irvine Ranch itself was never an Option B Pool Participant. It is therefore presumably an Option A Pool Participant and, as such, has assigned all its Pool-related claims to the County for the latter to pursue in its own action against Merrill Lynch. Nevertheless, the *Irvine Ranch* case is clearly analogous to this one, and instructive to our analysis.

As the district court pointed out, Irvine Ranch alleged the *same monetary loss* as that alleged in the County's own complaint against Merrill Lynch—namely, the loss it suffered to its principal investments in the Pool. The district court nevertheless found that because Irvine Ranch's complaint was based on an alleged breach of a separate duty to itself rather than an alleged breach of duty to the trust, "[t]he fact each case may involve the same monetary loss is not controlling . . . ." What was significant in the case was that Irvine Ranch, although a beneficiary of the trust Pool, was able to allege a separate cause of action for liability damages owed directly to it by Merrill Lynch, even though the actual monetary loss it complained of was the *same* monetary loss from the collapse of the Pool for which the County sought reimbursement in *its* action against Merrill Lynch.

We agree with the decision in *Irvine Ranch.* As applied to this case, we conclude that as long as appellants have adequately alleged breaches of duty by Merrill Lynch owed directly to themselves, the fact they are seeking recovery for the same monetary losses as the County is seeking in its own complaint on behalf of the Option A Pool Participants will not by itself prevent appellants from pursuing this action separately from the County. (*Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390, 399-403 [177 Cal.Rptr. 398] [plaintiffs may proceed separately on tort and contract theories to recover the same single monetary loss, because the harm effected by the tortious conduct was different from that caused by the breach of contract].) We therefore turn to the specific causes of action of appellants' second amended complaint.

## IV. APPELLANTS' SECOND AMENDED COMPLAINT

Appellants' second amended complaint alleges causes of action against Merrill Lynch for fraud, conspiracy to defraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, receiving stolen property, and violations of RICO. Our present task is to determine, in light of the applicable principles of trust law and the particular

---

[33]Appellants' second amended complaint alleges: "At all times relevant to this Second Amended Complaint, Merrill Lynch had direct broker-dealer and investment advisor relationships with a number of [appellants], including the City of Mountain View, the City of Santa Barbara, and the City of Milpitas. . . ."

circumstances of this case, whether appellants have properly stated any cause of action against respondents sufficient to withstand demurrer.

Each of the causes of action of appellants' second amended complaint is based on factual allegations in the complaint to the effect that Merrill Lynch, with the purpose and intent of advancing its own financial interests, actively participated with the County in designing and implementing an investment strategy for the Pool, and then made a variety of misrepresentations through its affirmative public statements, actions and nondisclosures in order to induce appellants to deposit their funds in the Pool and keep them there despite growing concerns about the safety of the Pool's investment policies. The misrepresentations alleged were to the effect that the investment strategies employed by the County and Merrill Lynch on behalf of the Pool were prudent, sound, and well calculated to minimize volatility, to protect principal, and to provide liquidity. These representations were in fact false, in that the investment strategy designed and promoted by Merrill Lynch for the County Pool actually placed appellants' funds at a high degree of risk, failed to provide liquidity, and resulted in extremely volatile returns. Respondents made these misrepresentations in written prospectuses and reports, as well as in oral statements to appellants and to the general public. In addition, Merrill Lynch failed to disclose information to appellants that would have put them on notice of the extent of the risk they undertook by investing their funds in the Pool. Merrill Lynch made all these misrepresentations and failures to disclose in order to further its own economic interests. Based on these factual allegations, which we must treat as admitted for purposes of this appeal, we conclude that appellants have properly stated the alleged causes of action against respondents.

### A. *Fraud and Negligent Misrepresentation*

Appellants' second amended complaint alleges causes of action against respondents for fraud, conspiracy to defraud, and negligent misrepresentation (first, second and third causes of action).

The well-established common law elements of fraud which give rise to the tort action for deceit are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. (Civ. Code, §§ 1572, 1709-1710; *Gonsalves* v. *Hodgson* (1951) 38 Cal.2d 91, 100-101 [237 P.2d 656]; *Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; *Harazim* v. *Lynam* (1968) 267 Cal.App.2d 127, 130 [72 Cal.Rptr. 670]; 5 Witkin, Summary of Cal. Law (9th ed. 1988)

Torts, § 676, p. 778.)[34] It is not essential to liability for fraud that the person charged have received any advantage from the fraud. Thus, a person may be liable for fraudulent misrepresentations even if he or she gains no benefit or profit of any kind from them. (*Snyder* v. *Security First Nat. Bank* (1939) 31 Cal.App.2d 660, 665 [88 P.2d 760]; *Swasey* v. *de L'Etanche* (1936) 17 Cal.App.2d 713, 718 [62 P.2d 753]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 676, p. 778.) It is essential, however, that the person complaining of fraud actually have relied on the alleged fraud, and suffered damages as a result. (*Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 917 [114 Cal.Rptr. 622, 523 P.2d 662]; *Commonwealth Mortgage Assurance Co.* v. *Superior Court* (1989) 211 Cal.App.3d 508, 518-521 [259 Cal.Rptr. 425]; *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858, 866 [161 Cal.Rptr. 342]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, §§ 711, 718, pp. 810-811, 817-818.) What distinguishes actionable fraudulent deceit is the element of knowing intent to induce someone's action to his or her detriment with false representations of fact. Fraud is an intentional tort; it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and from nonactionable innocent misrepresentation. It is the element of intent which makes fraud actionable, irrespective of any contractual or fiduciary duty one party might owe to the other. (*Lacher* v. *Superior Court* (1991) 230 Cal.App.3d 1038, 1046-1047 [281 Cal.Rptr. 640]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 677, p. 127.)

■ The second amended complaint contains extensive allegations that Merrill Lynch made specific misrepresentations, both to appellants and to the general public, concerning the County's general investment strategy, and that it actively concealed the nature, status and actual volatility of the Pool's returns on investments. These allegations are sufficiently definite and substantive to state causes of action against respondents for fraud, conspiracy to defraud, and negligent misrepresentation. (*Rogers* v. *Warden* (1942) 20 Cal.2d 286, 288-290 [125 P.2d 7]; *Pierce* v. *Lyman, supra*, 1 Cal.App.4th at

[34]Fraud and deceit are defined in Civil Code sections 1572, 1709 and 1710. Civil Code section 1709 defines fraudulent deceit generally: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Civil Code section 1710 specifies four kinds of deceit: "A deceit, within the meaning of the last section, is either: [¶] 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true [intentional misrepresentation of fact]; [¶] 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true [negligent misrepresentation of fact]; [¶] 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact [concealment or suppression of fact]; or, [¶] 4. A promise, made without any intention of performing it." Civil Code section 1572, dealing specifically with fraud in the making of contracts, restates these definitions in slightly differing language, with the addition of a fifth kind of deceit, described generally as "Any other act fitted to deceive."

p. 1107; *Lacher v. Superior Court, supra,* 230 Cal.App.3d at pp. 1046-1047; *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 508-514 [169 Cal.Rptr. 478].) In light of the bankruptcy court's orders adopting the stipulations between the County and appellants, as well as the principles of trust law discussed above, we conclude appellants have stated claims for breaches of duties by Merrill Lynch *directly* to themselves, and *independent* of any duties owed by Merrill Lynch to the trust itself. (*Irvine Ranch Water District v. Merrill Lynch & Co., Inc., supra,* 1997 U.S. Dist. LEXIS 7030.)

### B. *Breach of Fiduciary Duty*

Next, the second amended complaint alleges causes of action against respondents both for breach of fiduciary duty, and for aiding and abetting a breach of fiduciary duty (fourth and fifth causes of action). As seen, beneficiaries of a trust may sue third parties who, in order to advance their own financial advantage, have actively participated with a trustee in breach of the trustee's duty to the trust. (*Saks v. Damon Raike & Co., supra,* 7 Cal.App.4th at p. 428; *Pierce v. Lyman, supra,* 1 Cal.App.4th at pp. 1103-1106.) Specifically, securities brokers who have assisted a fiduciary or a trustee in speculating with trust funds and deceiving the beneficiaries of an investment trust as to the financial stability of the trust are directly liable to the beneficiaries themselves both for breach of the *brokers'* fiduciary duties, and for aiding and abetting the trustee's breach in order to further the brokers' own economic interests. (*Duffy v. Cavalier* (1989) 215 Cal.App.3d 1517, 1533 [264 Cal.Rptr. 740]; Rest.2d Trusts, § 326, pp. 124-125; 4 Scott on Trusts, *supra,* § 326.2, pp. 296-298; Bogert on Trusts, *supra,* § 901, pp. 315-318; cf. *Pierce v. Lyman, supra,* 1 Cal.App.4th at pp. 1103-1106.)

The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. (*Pierce v. Lyman, supra,* 1 Cal.App.4th at p. 1101.) In order to plead a cause of action for breach of fiduciary duty, there must be an adequate showing of each of these elements. Although only three of the fourteen government entities that make up the appellants in this lawsuit allegedly had direct broker-client relationships with Merrill Lynch, this is not fatal to appellants' cause of action for breach of fiduciary duty. A fiduciary or confidential relationship may arise whenever confidence is reposed by persons in the integrity and good faith of another. If the latter voluntarily accepts or assumes that confidence, he or she may not act so as to take advantage of the others' interest without their knowledge or consent. (*Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg* (1989) 216 Cal.App.3d 1139, 1150 [265 Cal.Rptr. 330].) Persons who owe a fiduciary duty to the trustee of a trust may be liable to the trust

beneficiaries for breach of fiduciary duty whenever such fiduciaries actively collude with the trustee in breaching the trustee's own fiduciary duties. (*Bancroft-Whitney Co.* v. *Glen* (1966) 64 Cal.2d 327, 353 [49 Cal.Rptr. 825, 411 P.2d 921, 24 A.L.R.3d 795]; *Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1102-1104; *Morales* v. *Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 314-315 [160 Cal.Rptr. 239]; *St. James Armenian Church of Los Angeles* v. *Kurkjian* (1975) 47 Cal.App.3d 547, 552 [121 Cal.Rptr. 214]; *Gray* v. *Sutherland* (1954) 124 Cal.App.2d 280, 290 [268 P.2d 754].)

■■■ Here, the second amended complaint plainly alleges that the County, on the advice of Merrill Lynch, undertook a program of investment which was imprudent and unsuitable for the trust. This program included speculative investments in extremely volatile securities, risky transactions in highly leveraged interest-bearing instruments, and excessive commissions. Aside from alleging that respondents rendered unsound investment advice and had knowledge the County was breaching its fiduciary duties to its beneficiaries, the second amended complaint alleges they participated in preparing accountings and made public statements in order to conceal the risks of investing in the Pool, mislead Pool Participants, and advance their own monetary interests. Thus, active concealment, fraudulent misrepresentations, self-dealing for financial gain, and direct participation in breach of fiduciary duty are all described in detail. On this basis, we conclude the second amended complaint sufficiently states causes of action against respondents for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. (*Bancroft-Whitney Co.* v. *Glen, supra,* 64 Cal.2d at p. 353; *Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pp. 1105-1106; *Morales* v. *Field, DeGoff, Huppert & MacGowan, supra,* 99 Cal.App.3d at pp. 314-315; *St. James Armenian Church of Los Angeles* v. *Kurkjian, supra,* 47 Cal.App.3d at p. 552; *Gray* v. *Sutherland, supra,* 124 Cal.App.2d at p. 290; *Irvine Ranch Water District* v. *Merrill Lynch & Co., Inc., supra,* 1997 U.S. Dist. LEXIS 7030.)

## C. *Statutory Theft and Racketeering*

Finally, the second amended complaint contains causes of action for receipt of stolen property under Penal Code sections 484 and 496 (sixth cause of action) and violations of RICO (seventh cause of action).

Penal Code section 484, subdivision (a), defines theft. Among other things, it provides that "[e]very person who shall . . . knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft. . . . For purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any

money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question. . . ." Penal Code section 496 establishes punishment for knowingly receiving property "that has been obtained in any manner constituting theft. . . ." The factual allegations of the second amended complaint state that Merrill Lynch knowingly received property obtained from appellants by means of fraudulent representations. These allegations are sufficient to state a cause of action for receipt of property obtained by means of theft under California law.

Appellants also allege violations of RICO. As applicable to this case, RICO penalizes "racketeering activity" under circumstances that affect interstate or foreign commerce. Specifically, RICO declares it unlawful to use or invest income derived from "a pattern of racketeering activity" in the establishment, operation, or acquisition of an interest in any enterprise engaged in or affecting interstate or foreign commerce; or to conduct any enterprise engaged in or affecting interstate or foreign commerce "through a pattern of racketeering activity . . . ." (18 U.S.C. § 1962(a), (c).) Among other things, "racketeering activity" is defined to include any act involving fraud in the sale of securities, or indictable under federal laws prohibiting mail fraud, wire fraud, or interstate transportation of stolen property. (18 U.S.C. § 1961(1).)

Pursuant to these broad statutory definitions, numerous cases have held that fraud in the sale of securities qualifies as "racketeering activity" within the meaning of RICO. (*U.S.* v. *Blinder* (9th Cir. 1993) 10 F.3d 1468, 1471-1472 [allegations of fraud in "purchase and sale" and "offer and sale" of securities are sufficient to state cause of action under RICO]; *Laird* v. *Integrated Resources, Inc.* (5th Cir. 1990) 897 F.2d 826, 838 [securities "churning" is a predicate act under RICO]; *James* v. *Meinke* (5th Cir. 1985) 778 F.2d 200, 205-207 [consequential damages to investors arising from accountant's alleged misstatements and omissions in connection with sale of stock were sufficient to establish predicate acts of "racketeering activity" for RICO purposes]; *Koulouris* v. *Estate of Chalmers* (N.D.Ill. 1992) 790 F.Supp. 1372, 1376 [any willful misrepresentation or omission of material fact made in connection with sale of stock falls within the RICO definition of "racketeering activity"]; *Yancoski* v. *E.F. Hutton & Co., Inc.* (E.D.Pa. 1983) 581 F.Supp. 88, 94-97 [fraud in sale of securities qualifies as "racketeering activity" under RICO].)

The seventh cause of action of appellants' second amended complaint alleges that (a) respondents engaged in a pattern of unlawfully purchasing and selling securities instruments and fraudulently inducing appellants to

deposit their assets in the Pool in order to provide the funds for respondents to advance their unlawful securities schemes; (b) respondents' fraudulent securities activities affected interstate and foreign commerce by utilizing national securities exchanges and markets, interstate mails and wires; (c) respondents made willful misrepresentations and omissions of material fact in connection with the sale of securities for the purpose of deceiving and defrauding appellants; and (d) respondents engaged in mail and wire fraud and violations of federal securities laws. Appellants allege they suffered injuries as a result of respondents' fraudulent schemes, and request triple damages in accordance with RICO. (18 U.S.C. § 1964(c).) On the basis of ample precedent, these allegations sufficiently allege conduct in breach of duties owed directly to appellants under the federal RICO statutes. (*Reddy* v. *Litton Industries, Inc.* (9th Cir. 1990) 912 F.2d 291, 294.)

## V. Disposition

We conclude that pursuant to their agreements and stipulations with the County, appellants retained their inherent rights as trust beneficiaries to litigate their direct claims against third parties, such as Merrill Lynch, accused of having actively participated with the trustee in breaches of trust and fiduciary duty. Because the County is proceeding against Merrill Lynch as a debtor in bankruptcy on behalf of itself and as the *assignee* of the Option A Pool Participants, the County's claims against respondents do not conflict with or overlap the *direct* claims of appellants in this action. The instant action is brought pursuant to the bankruptcy court's own orders approving the CSA and the Stipulation, both of which specifically authorize appellants' pursuit of their direct claims against Merrill Lynch such as those alleged here. Appellants have sufficiently alleged causes of action for breaches of duties and liability damages owed directly to them by respondents. The trial court therefore erred in sustaining respondents' demurrer to the second amended complaint without leave to amend.

The judgment on the order sustaining respondents' demurrers to appellants' second amended complaint without leave to amend is reversed. Respondents shall pay appellants' costs on appeal.

Hanlon, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied January 6, 1999, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied March 31, 1999.