Filed 12/21/21 Orozco v. Deutsche Bank National Trust CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARTIN OROZCO, | B299115 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC715312) |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Mark V. Mooney, Judge. Affirmed.

Law Offices of Steven Rein and Steven Rein for Plaintiff and Appellant.

Wright, Finlay & Zak, Jonathan D. Fink and Cathy K. Robinson for Defendants and Respondents Deutsche Bank National Trust Company, as Trustee, etc., and Select Portfolio Servicing, Inc.

Plaintiff Martin Orozco appeals from a judgment of dismissal entered in favor of defendants Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital 1 Inc. Trust 2005-HE6 Mortgage Pass-Through Certificates, Series 2005-HE6 (Deutsche) and Select Portfolio Servicing, Inc. (SPS) (collectively, defendants) following the sustaining of defendants' demurrer to Orozco's second amended complaint. Finding no error, we affirm the judgment.

## BACKGROUND

A.    *Factual Background*

Our summary of the facts is taken from the allegations of the second amended complaint, which allegations we assume are true under the standard of review applicable to our review of a trial court's ruling on a demurrer. (*LeBrun v. CBS Television Studios, Inc.* (2021) 68 Cal.App.5th 199, 202 (*LeBrun*).)

In 2005, Orozco wanted to buy a home on Sixth Street in Los Angeles (the property). Although he had enough cash to make a large down payment and sufficient funds to make the monthly payments on a mortgage, he could not qualify for a loan due to credit issues. Unbeknownst to Orozco, Orozco's real estate/loan broker, John Martinez, and New Century Mortgage Corporation (New Century) made a deal in which a third party who could qualify for the mortgage, Miriam Perez, would be the borrower and purchaser of record of the property, but Orozco would provide the funds for the down payment ($234,000) and make the monthly mortgage payments. Perez, who

2

received compensation for her role in the scheme, signed a promissory note and a deed of trust in favor of New Century on June 2, 2005.

In August 2005, Perez conveyed her interest in the property to Martinez, and Martinez conveyed his interest to Orozco in March 2006. Although Perez remained the obligor on the loan, Orozco made the loan payments.[1] Orozco alleges that at the time of the transaction he believed he was the borrower and owned the property, and that he did not become "fully aware" of the facts until 2009. At that time, he brought a lawsuit against Martinez and Perez (New Century had become defunct by then); he ultimately settled with Martinez, although he was unable to collect on the settlement.

In June 2009, the note and deed of trust on the property were assigned to Deutsche, and SPS became the loan servicer. Deutsche and SPS accepted loan payments from Orozco and, in 2017, they were parties to an arrangement in which the loan payments would be made by direct debits from Orozco's bank account.

In early 2017, Orozco sought a loan modification from defendants. On June 10, 2017, SPS sent a letter addressed to Perez, stating she was approved for a loan modification and enclosing a loan modification agreement. Orozco believed the terms of the modification agreement were unacceptable and sought to discuss the terms with SPS, but SPS refused to speak to him because he was not the borrower on the loan.

---

[1] The second amended complaint alleges that the lender would not accept Orozco's payments at first, but he subsequently was able to make them.

3

Frustrated by SPS's refusal to speak to him and the threat of foreclosure, Orozco brought the instant action.

B.    *Procedural Background*

Orozco filed his original complaint in July 2018, alleging claims against Deutsche, SPS, NDEx West, Inc. (apparently the trustee for the foreclosure), and New Century for quiet title, injunctive relief, voiding or reformation of loan, and declaratory relief.  Deutsche and SPS filed a demurrer to the complaint, and Orozco responded by filing a first amended complaint alleging the same four causes of action.

In the quiet title cause of action, the first amended complaint alleged that New Century did not have the power or standing to transfer or assign its interest in the note and deed of trust to Deutsche or SPS (because New Century was subject to a cease and refrain order from the California Department of Corporations), and therefore the assignment was void; Orozco sought to quiet title to the property in himself, free and clear of all liens and encumbrances.  The injunctive relief cause of action incorporated by reference the allegations of the quiet title cause of action and sought injunctive relief to enjoin defendants from continuing with foreclosure proceedings.  The next cause of action, for voiding or reformation of loan, incorporated by reference the allegations of the prior two causes of action, and alleged that Orozco had been prevented from obtaining a loan modification because defendants erroneously added $247,000 to the principal amount of the loan, which caused the loan-to-value to be too high; Orozco asked that the loan be voided or that the principal amount be

4

reformed by deleting the $247,000 that had been added to the principal. The final cause of action, for declaratory relief, incorporated the previous allegations and alleged that an actual controversy existed regarding the assignment of the note and deed of trust to Deutsche and SPS and whether they had a right to foreclose; Orozco sought a judicial determination of the rights, duties, and liabilities of the parties.

Deutsche and SPS filed a demurrer to the first amended complaint. In his response/opposition to the demurrer, Orozco stated: "After reviewing the demurrer and conducting legal research to address the points raised in it, plaintiff requests the court to sustain the present demurrer with leave to amend to file a Second Amended Complaint (SAC), the amendments being designed in part to cure the defects in the existing pleadings, in part to modify the allegations of the [first amended complaint], in part to allege new or additional theories of recovery." Although the response/opposition stated that a copy of the proposed second amended complaint was attached, there is no such attachment in the record on appeal. The remainder of the response/opposition summarized the allegations in the first amended complaint, and discussed the corrections and additions Orozco proposed to make in the second amended complaint, as well as the legal support for his claims.

At the hearing on the demurrer on January 22, 2019, the trial court sustained the demurrer with 20 days leave to amend.[2] Six days

---

[2] Orozco elected to proceed on appeal without a reporter's transcript, therefore, we have no record of what was discussed at the hearing. The minute order from the hearing states only that the trial court had read and

5

later, Orozco filed the second amended complaint, the complaint at issue here. The second amended complaint no longer named NDEx, Inc. as a defendant, and alleged four causes of action: (1) unjust enrichment; (2) injunctive relief; (3) negligent loan servicing; and (4) declaratory relief.

In the first cause of action, for unjust enrichment, Orozco alleged the facts regarding the origination of the loan, his funding of the down payment, the transfers of title to the property, his making the loan payments, and the proposed loan modification. He alleged that defendants were unjustly enriched because he made loan payments and a $234,000 down payment "without any reciprocal cooperation or concessions by defendants." He sought restitution of all of the payments he had made, plus interest.

In the second cause of action, for injunctive relief, Orozco sought to enjoin defendants from continuing with foreclosure proceedings. He alleged he was entitled to such relief under Civil Code[3] section 2924.12, subdivision (a)(1), based upon alleged violations of sections 2923.5, 2923.17,[4] 2924.11, or 2924.17 (we will refer to these provisions generally as the California Homeowner Bill of Rights, or HBOR).

_____

reviewed the material submitted in connection with the demurrer and heard from counsel, and that the demurrer was sustained with leave to amend.

[3]     Further undesignated statutory references are to the Civil Code.

[4]     We note there is no section 2923.17; it appears Orozco meant to assert 2923.7.

6

In the third cause of action, for negligent loan servicing, Orozco alleged that defendants, as beneficiary/servicer and assignee of the loan, owed a duty to Orozco, as the "de facto borrower," to use due and reasonable care to consider and process the loan modification application he submitted, to treat him as the "de facto borrower" and discuss his concerns with him, and not to institute foreclosure proceedings without making such efforts. He alleged that defendants' conduct fell below the standard of care, causing him damage.

Finally, in the fourth cause of action, for declaratory relief, Orozco alleged that he contends he is the "de facto borrower," that defendants are estopped by their conduct from asserting otherwise or from asserting the defenses of lack of standing, unclean hands, or statute of frauds, and that defendants had actual or constructive notice of facts he has alleged. He alleged that defendants dispute these contentions, and he asked for a judicial determination of the parties' rights, duties, and liabilities.

Defendants filed a demurrer to the entire complaint and to each cause of action. As to the first and third causes of action (unjust enrichment and negligent loan servicing), defendants argued that the trial court did not authorize Orozco to add new causes of action when it granted him leave to amend upon sustaining the demurrer to the first cause of action, and therefore those new causes of action were improperly pled. Defendants also argued that each cause of action failed on multiple grounds. Finally, defendants argued that all of Orozco's claims arose from the alleged fraudulent agreement between New Century, Martinez, and Perez that occurred in 2005, and therefore

they all are barred by the three-year statute of limitations applicable to fraud claims.

Orozco argued in opposition to the demurrer that his addition of new causes of action was allowed because he indicated his intention to do so in his response/opposition to the demurrer to the first amended complaint and the trial court granted him leave to amend when it sustained the demurrer. He also addressed most of the other grounds raised by defendants, but did not address their statute of limitations argument.

At the hearing on the demurrer, the trial court on its own motion ordered the first and third causes of action stricken without leave to amend. It sustained without leave to amend the demurrer to the second cause of action (injunctive relief) on the grounds that it was barred by the statute of limitations and there was no basis for injunctive relief. Finally, it sustained without leave to amend the demurrer to the fourth cause of action (declaratory relief) on the grounds that it was barred by the statute of limitations and there was no actual controversy. The court entered judgment in favor of Deutsche and SPS, from which Orozco timely filed a notice of appeal.

## DISCUSSION

Orozco contends the trial court erred in striking the first and third causes of action because he gave notice of the changes he intended to make in his proposed second amended complaint and the court granted him leave to amend when it sustained defendants' demurrer to the first amended complaint. He also contends the court erred in sustaining the

8

demurrer to the second amended complaint because none of the claims is based upon fraud, and he alleged sufficient facts to state a claim as to each cause of action. We need not determine whether the trial court abused its discretion in striking the first and third causes of action because we conclude defendants' demurrer as to each cause of action was well taken.

A.   *Standard of Review*

"On review of a judgment of dismissal following the sustaining of a demurrer, 'our standard of review is clear: "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]"'" (*LeBrun, supra,* 68 Cal.App.5th at p. 207.) We must affirm the judgment if it is correct on any theory. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 460 (*City of Atascadero*).)

When a demurrer is sustained without leave to amend, ""'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff."' [Citation.] 'Plaintiff must show

9

in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.]" (*LeBrun, supra,* 68 Cal.App.5th at p. 207.) "[W]here the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*City of Atascadero, supra,* 68 Cal.App.4th at p. 459.)

B.    *First Cause of Action*

As noted, in his cause of action for unjust enrichment, Orozco alleged that defendants were unjustly enriched because he made a down payment and loan payments and did not receive "cooperation or concessions" from defendants. Defendants raised five grounds in its demurrer to this cause of action. First, defendants argued the claim was barred by the three-year statute of limitations applicable to fraud. Second, they asserted that the doctrine of unclean hands barred Orozco from availing himself of the court's equitable powers. Third, they contended that unjust enrichment was a remedy, not a cause of action. Fourth, they contended that Orozco failed to allege facts to show that defendants were unjustly enriched. Finally, defendants asserted that Orozco cannot seek the equitable remedy of unjust enrichment because he did not "do equity." Although the trial court did not rule on any of these grounds because it struck the cause of action on the ground that Orozco had not been given permission to add a new claim, we conclude that defendants' demurrer to this claim was well taken because Orozco did not, and cannot, allege facts to show that defendants were unjustly enriched.

10

In his appellant's opening brief, Orozco contends that defendants were unjustly enriched because even though he made a down payment and regular monthly payments to defendants and their predecessor, he is under the threat of losing his home because of defendants' refusal to "discuss or consider a loan modification or [treat] him as the borrower he in fact was, albeit de facto." He misunderstands the doctrine of unjust enrichment.

The equitable doctrine of unjust enrichment "applies where the plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on the defendant which the defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." (*Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 938.) In the present case, there was an enforceable contract, albeit not one to which Orozco was a party, in which defendants' predecessor provided funds that allowed Perez to purchase the property, and Perez agreed to make monthly payments. The fact that Orozco agreed to make the monthly payments in place of Perez does not mean that Orozco conferred a benefit on defendants that it would be inequitable for defendants to retain. Defendants (or their predecessor) were entitled to those payments in exchange for the benefit they already had conferred, i.e., the funds they advanced for the purchase of the property.

Because Orozco cannot allege that he conferred a benefit on defendants that they were not entitled to retain, he cannot seek to recover under the unjust enrichment doctrine. Therefore, defendants were entitled to judgment on the first cause of action.

11

C.    *Second Cause of Action*

In his second cause of action, Orozco alleged he was entitled to injunctive relief under the HBOR.  In their demurrer defendants challenged this cause of action on four grounds:  (1) the fraud statute of limitations barred the claim; (2) injunctive relief is a remedy, not a cause of action; (3) Orozco does not have standing to seek injunctive relief under the HBOR; and (4) Orozco cannot allege any facts to support injunctive relief.  The trial court sustained the demurrer on the grounds that the claim was barred by the statute of limitations and that there was no basis for injunctive relief.  We find that the statute of limitations does not bar this claim because the claim as alleged was not based upon fraud, but instead was based upon defendants' alleged refusal to discuss or negotiate a loan modification with Orozco in 2017 and 2018, less than a year before the original complaint was filed.  Nevertheless, we conclude the demurrer properly was sustained because Orozco does not have standing to seek injunctive relief under the HBOR.

The purpose of the HBOR "is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." (§ 2923.4.)  To advance this purpose, the HBOR includes various provisions to protect and assist borrowers, such as (1) requiring a mortgage servicer to contact the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure before the

12

mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may record a notice of default (§ 2923.5); (2) requiring a mortgage servicer to establish a single point of contact and provide the borrower one or more direct means of communication with that point of contact when the borrower requests a foreclosure prevention alternative (§ 2923.7); (3) prohibiting the recordation of a notice of default or notice of sale if a foreclosure prevention alternative is approved in writing and the borrower is in compliance with its terms (§ 2924.11); and (4) requiring a mortgage servicer to ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the mortgagee's right to foreclose before recording or filing a notice of default, notice of sale, or other specified documents (§ 2924.17).

To enforce these provisions, the HBOR includes a provision that allows "a borrower [to] bring an action for injunctive relief to enjoin a material violation of Section . . . 2923.7, . . . 2924.11, or 2924.17." (§ 2924.12, subd. (a).) As this and the other provisions of the HBOR clearly state, the protections afforded under the act apply only to a borrower.[5] Here, the only borrower identified on the deed of trust at issue is Perez.

Orozco contends, however, that whether he is a borrower is a disputed factual issue, arguing that (1) defendants are estopped to

[5] "Borrower" is defined in the HBOR as "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer." (§ 2920.5, subd. (c)(1).)

13

assert that he is not a borrower, and/or (2) he is a "de facto borrower." Neither argument has merit.

First, the doctrine of equitable estoppel does not apply under the facts of this case. The doctrine is codified in section 623 of the Evidence Code, which provides: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." "'"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."'" (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37.) "Although estoppel is generally a question of fact, where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether estoppel applies is a question of law." (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360.)

In the present case, Orozco contends defendants are estopped from denying that he is the borrower because New Century knew that the down payment and monthly loan payments would be paid by Orozco, and that knowledge is imputed to defendants, who accepted the loan payments from Orozco. But even if it is true that New Century had such knowledge and that knowledge was imputed to defendants (issues

14

we do not decide), the undisputed evidence is that defendants consistently maintained that Perez, not Orozco, was the borrower. In fact, documents Orozco attached as exhibits to his complaints show that all correspondence from defendants or their predecessors regarding the loan, including notices of default and the proposed loan modification agreement, was addressed to Perez, and Orozco alleged that defendants would not communicate with him regarding the loan because he was not the borrower. The fact that defendants and their predecessors accepted payments from Orozco is not evidence that they accepted that he was the actual borrower, since the deed of trust expressly states that the lender's acceptance of payments from a third party shall not act as a waiver of the lender's rights and remedies against the borrower.

Moreover, Orozco was well aware of the true fact that Perez, and not he, was the borrower of record on the loan and deed of trust. Indeed, he alleged in the lawsuit that he filed in 2009 against Martinez and Perez that he discovered in 2006 that the loan was in Perez's name and that when he faced foreclosure (sometime before that lawsuit was filed) "he [was] unable to refinance because the loan is in PEREZ'S name," and Perez refused to work with him to try to modify the loan unless she was paid $12,000.

In other words, as a matter of law, Orozco cannot establish the second and third elements necessary for estoppel to apply.

Orozco's second argument—that he is a "de facto borrower"— similarly cannot save his second cause of action. Orozco has not cited to, and we have not found, any authority establishing "de facto borrower" as a legal designation. His attempt to characterize it as an

15

application of "[t]he de facto doctrine" by pointing to California's recognition of de facto mergers and de facto parents is misguided. First, the California Legislature expressly recognized de facto mergers by enacting Corporations Code section 1200, which codified the de facto merger doctrine originally adopted in federal courts. There is no such legislation (or court-adopted designation) with regard to "de facto borrower." Second, while courts have long recognized that a person may be designated a de facto parent in dependency cases, that designation does not entitle the de facto parent to all of the rights accorded to an actual or presumed parent. Instead, "[d]e facto parent status merely allows a person who has assumed the role of parent of a child to participate in the court hearings and share their 'legitimate interests and perspectives' with the juvenile court as it makes decisions about the child's future care and welfare. . . . The status merely provides a way for the de facto parent to stay involved in the dependency process and provide information to the court." (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 146.) In light of the unique purpose and procedures of the dependency process, the recognition of de facto parent status has no bearing on whether any other de facto status should be recognized.

In any event, even if we were to recognize "de facto borrower" status, Orozco's attempt to assert a claim under the HBOR necessarily fails because the HBOR applies only to a "borrower" as defined in that act, and that definition limits a "borrower" to a mortgagor or trustor. Because the deed of trust makes clear that Perez— and only Perez—is the mortgagor and the trustor with regard to the loan at issue here, we

16

conclude that Orozco has not stated, and cannot state, a claim for injunctive relief under the HBOR.

D.    *Third Cause of Action*

Orozco's negligent loan servicing claim alleges that defendants breached their duty of care owed to him as a "de facto borrower" by, in essence, failing to comply with the provisions of the HBOR. Defendants challenged this cause of action on several grounds, including that it fails to allege facts sufficient to state a cause of action because defendants did not owe any duty to Orozco because he was not a borrower. Although the trial court struck the cause of action on the ground that Orozco had not been given permission to add a new claim, we conclude that defendants' demurrer to this claim was well taken because Orozco did not, and cannot, allege facts to show that defendants owed him any duty.

As discussed in section C., *ante*, defendants were not required to comply with the provisions of HBOR with respect to Orozco because he was not a borrower as defined in that act. Similarly, the cases Orozco cites in support of his assertion that defendants owed him a duty of care do not apply here, since they all involved the duties owed by lenders and/or loan servicers to the actual borrower. (See *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150 [plaintiffs were the borrowers under a deed of trust]; *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941 [plaintiffs sought to obtain a modification of their home loan]; *Lueras v. BAC Home Loans Servicing,*

17

*LP* (2013) 221 Cal.App.4th 49 [plaintiff refinanced his home loan, secured by a trust deed against his home]; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 [plaintiff entered into a construction loan agreement with lender].)  Accordingly, we conclude that Orozco did not, and cannot, state a cause of action for negligent loan servicing against defendants.

E.     *Fourth Cause of Action*

In his claim for declaratory relief, Orozco alleges that there is an actual controversy regarding whether he is a "de facto borrower," whether the estoppel doctrine applies to defendants, and whether defendants had actual or constructive notice of the facts regarding the alleged agreement between New Century, Martinez, and Perez.  The trial court sustained defendants' demurrer to this claim on two grounds: it was barred by the statute of limitations, and there was no actual controversy.  As we discussed in section C., *ante*, undisputed evidence establishes that the estoppel doctrine does not apply, and there is no legal basis to recognize a "de facto borrower" status.  In light of the fact that, as a matter of law, defendants are not estopped from denying Orozco's status as a borrower and owe him no duty of care as a "de facto borrower," whether defendants had actual or constructive notice of the facts surrounding the origination of the loan is irrelevant.  Therefore, Orozco's allegation cannot be a basis for a declaratory relief claim.  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80 [a plaintiff seeking declaratory relief are required to allege the existence of an actual,

present controversy].)  Accordingly, the trial court did not err in sustaining the demurrer to the fourth cause of action.

## DISPOSITION

The judgment is affirmed.  Defendants Deutsche and SPS shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                                    WILLHITE, J.
We concur:


MANELLA, P. J.


COLLINS, J.


19