Filed 3/28/22  Kwuan v. NorCal Research Development CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

EDWARD KWUAN,

      Plaintiff and Appellant,

v.

NORCAL RESEARCH
DEVELOPMENT, LLC,

      Defendant and Respondent.

A161330

(Alameda County
Super. Ct. No. RG-19-018877)

Plaintiff and appellant Edward Kwuan (appellant) appeals from the trial court's judgment in favor of defendant and respondent NorCal Research Development, LLC (respondent) in appellant's commercial unlawful detainer action.  Appellant alleges respondent violated the parties' lease agreement for a warehouse by growing marijuana without the required permits from the City of Oakland.  Following a bench trial, the trial court found that respondent was unable to obtain the permits because there was no fire sprinkler system in the warehouse, and that appellant could not evict respondent because the lease agreement obligated appellant to provide a functioning sprinkler system.  We conclude the court erred in interpreting the lease and reverse.

1

## BACKGROUND

Appellant is the owner of a warehouse on 5th Street in Oakland (Property). The parties entered into a five-year lease agreement, beginning in September 2017 (Lease). Respondent uses the Property as an indoor cannabis cultivation facility.

On May 7, 2019, appellant served respondent with a "Three Day Notice to Cure or Quit" (Notice). The Notice alleged, in relevant part, that respondent breached the Lease by failing to obtain the required permits for its business (the grow operation). The Notice required respondent to cure the alleged breach by completing the work required to obtain the permits (installing fire sprinklers) and obtaining the permits, or to deliver possession of the Property to appellant.

On May 14, 2019, appellant filed the present unlawful detainer action. In its trial briefs, respondent admitted it had operated without the required permits, but it explained it could not obtain the permits because the Property lacked a fire sprinkler system and argued it was appellant's obligation to provide the system under the Lease.

Following a bench trial, the trial court concluded the "plain language of the Lease obligated [appellant] to provide and maintain the fire sprinkler system at the Property." The court found that appellant's "failure to provide a working fire sprinkler system prevented [respondent] from completing the work necessary to obtain the permits required to legally operate." The court held that, "[b]ecause the only cure options [appellant] would accept . . . required [respondent] to obtain the necessary permits and complete the work on the fire sprinkler system," appellant's "responsibility for and failure to provide a working fire sprinkler system at the start of the Lease is a defense to this action."

The trial court entered judgment in favor of respondent and this appeal followed.

DISCUSSION

I.    *The Lease*

The Lease is a modified form lease prepared by "AIR Commercial Real Estate Association" and captioned "Standard Industrial/Commercial Multi-Tenant Lease – Net." Appellant signed the Lease as managing member of an investment company; the company is identified as "Lessor" on the Lease. Respondent is named as "Lessee." Paragraph 1.8 of the Lease authorizes "[a]ny legal use" of the Property but specifies, "Lessee shall obtain and maintain in good standing any requisite license and permit necessary for its business operation . . . ."

Paragraph 2.2 of the Lease, captioned "Condition," is the critical disputed provision. It states in relevant part that "Lessor . . . warrants that the existing electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ('HVAC'), loading doors, sump pumps, if any, and all other such elements in the Unit, other than those constructed by Lessee, shall be in good operating condition . . . ."

Paragraph 7.2 of the Lease, captioned "Lessor's Obligations," states in relevant part, "Subject to the provisions of Paragraphs 2.2 (Condition), … Lessor, subject to reimbursement pursuant to Paragraph 4.2, shall keep in good order, condition and repair the foundations, exterior walls, structural condition of interior bearing walls, exterior roof, fire sprinkler system, Common Area fire alarm and/or smoke detection systems, fire hydrants, parking lots, walkways, parkways, driveways, landscaping, fences, signs and utility systems serving the Common Areas and all parts thereof . . . ."

3

In its decision, the trial court referenced evidence at trial that it would cost over $38,000 to install a sprinkler system and an additional $100,000-$150,000 to add the connections necessary to provide water to the system. Regarding the Lease, the court concluded, "The plain language of the Lease obligated [appellant] to provide and maintain the fire sprinkler system at the Property. (Lease ¶¶ 2.2 & 7.2.) In [p]aragraph 2.2, [appellant] expressly warranted that the fire sprinkler system would 'be in good operating condition' at the start of the Lease."

II. *The Trial Court Misinterpreted the Lease*

Because neither the trial court nor the parties rely on extrinsic evidence, we review the trial court's construction of the Lease "de novo." (*California Nat'l Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 142.) In doing so, "We apply familiar rules: We interpret the lease to give effect to the parties' mutual intent at the time of contracting. (Civ. Code, § 1636.) We ascertain that intent from the lease terms alone if they are clear and explicit. (Civ. Code, §§ 1638, 1639.) We give the terms their ordinary and popular meaning unless the parties clearly intended to give them technical or special meanings. (Civ. Code, § 1644.) And we construe the lease as a whole to give effect to every part. (Civ. Code, § 1641.)" (*Glovis Am., Inc. v. Cty. of Ventura* (2018) 28 Cal.App.5th 62, 68–69.)

We conclude the trial court misinterpreted the Lease because the court's construction fails to give effect to certain language in paragraph 2.2. As noted previously, under paragraph 2.2 appellant warranted the condition of "the *existing* electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ('HVAC'), loading doors, sump pumps, *if any*. . ." (Italics added.) Thus, paragraph 2.2 of the Lease only required appellant to provide a sprinkler system if it was "existing" at the

4

time of execution and the language of the paragraph specifically contemplated the possibility that not all of the listed elements (e.g., sprinkler, loading doors, sump pumps, etc.) would be present because it followed the list with "if any." The trial court's construction effectively rendered meaningless the words "existing" and "if any" in paragraph 2.2. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473 ["Courts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless."].)

Neither does paragraph 7.2 oblige appellant to provide a sprinkler system. That paragraph describes appellant's obligation to keep specified elements in "good order, condition and repair." Although the paragraph references a "fire sprinkler system," the paragraph expressly states that it is "[s]ubject to" paragraph 2.2. Thus, the paragraph only obligates appellant to maintain a fire sprinkler system if one exists. The paragraph cannot reasonably be read to require appellant to install a fire sprinkler system, any more than it can be read to require appellant to install a parking lot or landscaping (other listed elements) if appellant is not required to provide those by other language in the Lease.

Respondent argues that the references to the sprinkler system in paragraphs 2.2 and 7.2 "would have no meaning if [appellant] bore no responsibility as to the fire sprinkler system." We disagree. It does not render any part of the paragraphs meaningless to recognize that the language is from a form lease intended to cover any of the listed elements that *do* exist at the property subject to the lease. As appellant argues, paragraph 2.2, "as a standard boilerplate paragraph, seeks to address a wide range of *possible* situations . . ." The inclusion of the words "existing" and "if

5

any," and the conditioning of the maintenance obligation of paragraph 7.2 on paragraph 2.2, make it clear appellant's obligations only extend to the listed elements that are actually present. It is the trial court's interpretation that renders language in the Lease meaningless.

Respondent also argues the trial court's construction does not fail to give effect to the term "existing" because the "purpose" of that term "is to ensure that [appellant's] warranty does not extend to features installed by" respondent. However, that purpose is already accomplished by *other* language in paragraph 2.2. To wit, the paragraph expressly excludes from the lessor's warranty those elements "constructed by Lessee." It is unreasonable to interpret "existing" (or, much less, "if any") as accomplishing no more than the same purpose as that express and direct language.

Accordingly, the trial court erred in concluding that appellant's failure to install a sprinkler system was a defense to the unlawful detainer action.

## DISPOSITION

The trial court's judgment is reversed. The matter is remanded with directions to enter judgment in favor of appellant. Appellant is awarded his costs on appeal.

_____

SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

NEEDHAM, J.

(A161330)